## STATE v. WOOLMAN

No. 5453.   Decided June 14, 1934.   (33 P. [2d] 640.)

24

*Paul E. Reimann,* of Salt Lake City, for appellant.

*Joseph Chez,* Atty. Gen., and *Zelph S. Calder,* Deputy Atty Gen., for the State.

MOFFAT, Justice.

The defendant and appellant, James Woolman, and others, were accused by the information in the cause of the crime of participating in a riot. The alleged riot it is charged occurred on the 23d day of February, 1933, at the City and County building in Salt Lake City, Utah, while the sheriff of the county in pursuance of his duty was holding a sale of real property. The appellant, James Woolman, alone stood trial upon the information.

Upon the trial to a jury, the defendant was found "guilty of the crime of participating in an unlawful assembly."

The information upon which the defendant was tried sets forth that the defendant and another having been duly com-

mitted by a committing magistrate is accused by the district attorney of the crime of participating in a riot at the time and place above stated, and charges specifically that the defendant and others "on the 23rd day of February, A. D. 1933, at the County of Salt Lake, State of Utah, acting together and concertedly, and with divers other persons whose names are unknown, did without authority of law, wilfully, unlawfully, and feloniously use and threaten to use force and violence in disturbing the public peace, said threats to use force and violence being then and there accompanied by immediate power of execution and said persons acting as aforesaid among other things, did then and there, wilfully, unlawfully, feloniously, riotously, and with force and violence obstruct and prevent S. Grant Young, duly elected, qualified, and acting Sheriff of Salt Lake County, State of Utah, from performing the duties and obligations of his office incident to the conducting of a duly authorized Sheriff's Sale of Real property, and did then and there wilfully, unlawfully, and feloniously use and threaten to use force bruise, and illtreat German Dean, Charles Fernstrom, and Ray Cahoon, duly qualified peace officers of Salt Lake City, Salt Lake County, State of Utah, who were then and there acting in the line of their duty in preserving the public peace, and did then and there wilfully, unlawfully, riotously, feloniously, and with force and violence break and damage the doors leading into the office of said Sheriff S. Grant Young, said doors being located in the City and County Building, Salt Lake City, Utah, and did then and there wilfully, unlawfully, riotously, and feloniously make great noise, and did then and there threaten to cut, beat, bruise, harm, and kill the said Sheriff S. Grant Young and his deputies, said threats being then and there accompanied by immediate power of execution, and all to the terror and disturbance of the peace of the people of the State of Utah, and contrary to the provisions of the Statute of the State of Utah," etc.

The case is in this court upon the judgment roll alone.

After verdict and before judgment, defendant interposed a motion in arrest of judgment and in due time filed his motion for a new trial.

Appellant's first assignment of error goes to the question of alleged error by the trial court in denying his motion in arrest of judgment, and particularly specifies the ground upon which the motion was based as follows:

(a) That the information fails to state facts sufficient to constitute the crime of *unlawful assembly* of which the verdict purports to find the appellant guilty.

(b) That the commission of the crime of *unlawful assembly* is not necessarily included in the crime of riot as defined by the Utah statute defining riot.

(c) That it was error to instruct the jury that the crime of *unlawful assembly* is *necessarily* included in the crime of *riot* as defined by the Utah statutes, and was also error to permit the jury to bring in a verdict of guilty of *unlawful assembly* or guilty of participating in an unlawful assembly upon an information which alleges only those elements which charge the crime of riot.

The second assignment of error goes to the question raised that the court erred in denying appellant's motion for a new trial upon the ground that the verdict is contrary to law.

The third assignment attacks the validity of the verdict based upon a purported offense not expressly charged nor sufficiently alleged in the information.

The fourth assignment assails the judgment and sentence as being unconstitutional in that it deprives the appellant of his liberty without due process of law, because of his having been convicted of an alleged offense not contained in the information, and therefore no notice was given to him by the information which failed to charge the crime of which he was convicted.

Manifestly the errors complained of by assignments Nos. 3 and 4 are subsidiary questions to those raised by assignments Nos. 1 and 2, and, while there is a clear distinction

to be drawn between assignment No. 3 and assignments Nos. 1 and 2, in that assignment No. 3 attacks the sufficiency of the information to charge the crime of *unlawful assembly* whether or not the crime of *unlawful assembly* is or is not an included offense of the crime of riot as defined by the statute. If, therefore, the crime of *unlawful assemly* is not an included offense of the crime of riot, the trial court erred in its instructions to the jury, and the verdict may not stand. Likewise, if the information fails to allege facts sufficient to charge *unlawful assembly*, and the offense of riot and unlawful assembly are distinct offenses as defined by the statute, the defendant may not be charged with the one and tried upon the other.

The court instructed the jury as follows:

"You are instructed that the offense specifically charged in the information is that of participating in a riot. *This charge necessarily includes in contemplation of law, the charge of participating in an unlawful assembly, of assault, and of battery, and under the law the defendant may be convicted of the offense specifically charged or of any of such other offenses so included.* You are therefore instructed that if you find from the evidence that the defendant is not guilty of participating in a riot, but is guilty of one of the included offenses named, then you may find him guilty of that included offense, which from all of the evidence and under these instructions, you are convinced beyond a reasonable doubt that he is guilty of." (Italics added.)

The court further instructed the jury that their verdict should be:

"Guilty of participating in a riot, as charged in the information, or guilty of participating in an unlawful assembly, as charged in the information, or

"Guilty of assault as charged in the information, or

"Guilty of battery as charged in the information, or

"Not Guilty as your deliberations may result."

The trial court also instructed the jury as to the law defining each of the offenses referred to in the instructions.

Only those sections relating to riot and unlawful assembly need be noticed here. As it is clear the offenses of battery and assault are both alleged, whether or not they are included offenses is not raised in this case.

Riot is defined by the Utah statute to be:

"Any use of force or violence disturbing the public peace, or any threat to use such force or violence, if accompanied by immediate power of execution, by two or more persons acting together and without authority of law is a riot." Comp. Laws Utah 1917, § 8218, Rev. Stat. Utah 1933, 103-50-2.

An unlawful assembly is defined to be:

"Whenever two or more persons, assemble together to do any unlawful act, and separate without doing or advancing toward it, or do a lawful act in a violent, boisterous or tumultuous manner, such assembly is an unlawful assembly." Comp. Laws Utah 1917, § 8221, Rev. Stats. Utah 1933, 103-50-5.

Appellant maintains that there are two questions before this court on this appeal: (1) Whether or not the offense defined by the statute as unlawful assembly is necessarily included within the offense of riot as likewise defined by the statute; and (2) whether, if the offense of unlawful assembly is not an included offense of the crime or offense of riot, the information contains all of the necessary or essential allegations to state the offense of unlawful assembly.

No objection is here raised upon the ground of duplicity, or that the information charges two separate offenses, nor, indeed, could such question be raised in the instant case, no objection having been interposed until after verdict. If, therefore, the information alleges facts sufficient to support the charge of riot and also the charge of unlawful assembly and even though they are separate offenses the objection coming as it did after verdict and no objection having been taken by special demurrer or otherwise before the jury was sworn to try the case, the objections

here raised could not be considered. The conviction under the circumstances would not be fatal because two offenses are charged in one information. *State* v. *Anderton,* 69 Utah 53, 252 P. 280; *State* v. *Durfee,* 77 Utah 1, 6, 290 P. 962.

Counsel for appellant does not attack the information for failure to charge some public offense, but for failure to state facts sufficient to sustain the offense of which appellant was convicted by the jury. Many cases involving cases of included offenses and offenses that may not be regarded as included offenses have been cited by appellant. No case directly deciding the precise questions here raised has been cited, nor has the court been able to find a case construing a statute like ours in the particular situation here presented, although other states have statutes identical (California, Indiana) or similar to our own.

There likewise seems to be no question but that the crime of unlawful assembly was an included offense of the crime of riot at common law. The definitions vary somewhat with the cases, the text of the authority cited, or the interpretation of what is declared to be the common-law definition of riot. Thus, Bishop, vol. II (9th Ed.) § 1143, substantially quoting Hawkins, declares that:

"Riot is such disorderly conduct in three or more assembled persons, actually accomplishing an object, as is calculated to terrify others."

Thus *three or more assembled persons* is a part of the definition. Another definition of riot is found in 54 C. J. p. 828, as follows:

"A riot is commonly defined as a tumultuous disturbance of the peace by three or more persons, assembled and acting with a common intent; either in executing a lawful private enterprise in a violent and turbulent manner, to the terror of the people, or in executing an unlawful enterprise in a violent and turbulent manner."

Counsel for appellant properly concedes that the common-law definition of the crime of riot includes the idea of "as-

sembly," or "unlawful assembly," or an "assemblage of persons with common intent," as one of the elements of the definition of riot.

A comparison of the statutory provisions, supra, with the common-law definitions discloses that the question here presented is whether or not "unlawful assembly," as defined in our statutes, is an essential element of, and is necessarily included in, the crime of riot as likewise defined by our statutes.

That the information under which the appellant was convicted was intended to allege and did allege facts sufficient to support the charge of riot and assault and battery is clearly disclosed by the allegations of the information. It was upon the charge of riot that appellant was tried. That the allegations would, if proved, support a conviction of riot, or assault, or battery, we have no hesitancy in maintaining. The record is not before us, so we are not in position to say whether the evidence as submitted would in our opinion have been sufficient to support a conviction of either offense. Sufficient it is to say that, the jury being instructed as to the law and having heard the evidence, they were of the opinion the defendant was not guilty of riot, but was guilty of unlawful assembly, or, as stated by the verdict, "of participating in an unlawful assembly."

If the offense of "unlawful assembly" as defined by the statute, contains an element or elements not to be found in the offense of riot as also by the statute defined, or if the former is not "necessary included" in the latter then the information either charged two offenses, one of which was not necessarily included in the other, or charged but one offense, that of riot. For unlawful assembly to be necessarily included in the offense of riot as charged all the elements of the lesser offense of unlawful assembly must not only be a part of the greater offense of riot in fact, but must also be embraced within the legal definition of the greater offense of riot as by the statute defined.

To constitute the commission of the offense of unlawful assembly as defined by our statute, two or more persons must assemble together (a) with the intent for the purpose of doing some unlawful act and separate without doing it or advancing toward it; or (b) two or more persons must assemble together to do a lawful act in a violent, boisterous, or tumultuous manner and separate without doing it or advancing toward it. It appears to us that the crime of unlawful assembly as defined by the statute involves a specific intent concurring with the act of meeting in a group or in the assembling together. The participants must "assemble together" or must meet with the intent of doing or committing some particular act which is unlawful, and separate or disperse without committing or bringing about the intended act; or they must assemble together for the purpose and with the intention of doing some act in itself lawful, but in a manner by the statute designated as violent, tumultuous, or boisterous, and therefore unlawful.

The foregoing construction of the statute adopts the one of two constructions which we believe is in harmony with the legislative intent and in harmony with the other provisions of the statute relating to that group of crimes denominated as being against the public peace, and particularly those of riot and rout. Repeating the statute with the above construction it is necessary that it be read with the parenthetical insertions as follows:

"Whenever two or more persons, assemble together to do any unlawful act, and separate without doing or advancing toward it, or *(to)* do a lawful act in a violent, boisterous or tumultuous manner *(and separate without doing or advancing toward it)*, such assembly is an unlawful assembly."

Another construction is to read the word "or" before the inserted word "to" as "and." Such construction enlarges the ordinary conception and would convert the section into one requiring more than an assembly, and would require an overt act trenching upon the riot section on the one hand

and rendering meaningless that part of the section "and separate without doing or advancing toward it" on the other.

A reading of the charging part of the information fails to disclose a purpose, manner, or an intent, nor an assembling, unless such words as "acting together and concertedly" be construed to be the equivalent of "assemble together" as found in 103-50-5, Rev. Stats. Utah 1933, section 8221, Comp. Laws Utah 1917.

The information charges that the defendant (and others, naming them) "* * * acting together and concertedly and with divers other persons whose names are unknown, did without authority of law," etc.

We think it may be conceded without argument that the information states facts sufficient to charge the offense of riot as defined by the statute; also that it states facts sufficient to charge the offense of both assault and battery, whether or not either of them are included offenses within that of riot.

Two or more persons can act together or concertedly in the perpetration of a crime without having assembled together with intent to commit the crime. Likewise two or more persons may be a part of a lawful assembly assembled for an innocent or lawful purpose and occasion may arise whereby two or more of such assembly may riot, or cause a riot, or rout, without converting the assembly as such into an unlawful assembly or forming another assembly.

The information in the instant case, as examination discloses, fails to allege the following necessary elements of the crime of unlawful assembly.

(1) It is not alleged that the defendants "assembled together."

(2) No intent of doing either any particular unlawful act, or any particular act lawful of itself but in a violent, boisterous, or tumultuous manner.

To sustain a conviction for unlawful assembly, the complaint must not only allege that certain named persons as-

sembled together to do an unlawful act or to do a lawful act in a violent, boisterous, or tumultuous manner, but must specify or characterize the particular act or acts alleged to be unlawful or the particular lawful act or acts characterizing the violent, boisterous, or tumultuous act or acts, intended to be done by the persons so assembling together. The terms "unlawful act" and "lawful act" are but generic and in the language of the statute do not sufficiently specify or characterize the act to properly inform the defendant of the nature of the accusation against him. The allegations must be direct and certain. *State* v. *Topham,* 41 Utah 39, 123 P. 888; *State* v. *Gesas,* 49 Utah 181, 162 P. 366; *State* v. *Lund,* 75 Utah 559, 286 P. 960; *State* v. *Durfee,* 77 Utah 1, 13, 290 P. 962, 966. In the last case cited it is said:

" 'If anything is established and set at rest in the law, it is that defects in substance of an information or indictment are not cured by evidence or verdict,' and that it is not a technical but a sound and fundamental rule in the law of criminal procedure that an accused be apprised, not by the evidence adduced, but at the outset by the information or indictment, with reasonable certainty of the particulars and nature of the accusation, and that an information as to substance must stand or fall by its own structure and cannot be aided by evidence or verdict."

The information having failed to state the essential and necessary elements of the offense of "unlaful assembly," the offense of which the verdict of the jury found the appellant guilty, the trial court should have granted appellant's motion in arrest of judgment and motion for a new trial.

From what has been said, little more need be added to the argument as to the other assignments of error, raising the question as to whether or not the offense of unlawful assembly is necessarily included in the crime of riot, or the other subsidiary questions. That the crime of unlawful assembly was an included offense within the crime of riot at common law is uniformly recognized.

Under the common-law definitions of riot, the reference to an assembly of three or more persons is a part of the definition of riot, supra. No such language is a part of our statutory definition of riot. Many cases have been cited discussing questions relating to included offenses; none of them, however, has had any direct bearing upon the question at issue. Our search has not revealed a single case where the question presented here as to whether the offense of unlawful assembly is included in the offense of riot under statutes like our own has been decided, although our statute is identical in wording with that of some other states, among which are California and Indiana. An interesting and a pointed discussion concerning certain offenses is found in the case of *State* v. *Anderton,* 69 Utah 53, 252 P. 280, but in a discussion of what offenses are or are not included in a given offense defined by statute, little help, except by way of analogy, is obtained from interpretations of other and different statutes. The only way this matter may be determined is by discovering all of the elements required by the respective sections, comparing them and by a process of inclusion and exclusion, determine those common and those not common, and, if the greater offense includes all the legal and factual elements, it may safely be said that the greater includes the lesser; if, however, the lesser offense requires the inclusion of some necessary element or elements in order to cover the completed offense, not so included in the greater offense, then it may be safely said that the lesser is not necessarily included in the greater, or, stated otherwise. Can the crime of riot be committed without also committing the crime of unlawful assembly? It may be readily conceded that sufficient allegations may be made in a single information or a single count of an information to cover both offenses; but upon proper attack before verdict two separate offenses may not be charged in one information unless such offenses are by statute expressly permitted to be so joined or included. Comp. Laws Utah 1917, § 8834, Rev. Stat. Utah 1933, 105-21-7; *State* v. *Anderton,* supra.

"The jury may find the defendant guilty of any offense the commission of which is necessarily included in that with which he is charged in the indictment or information, or of an attempt to commit the offense." Section 9025, Comp. Laws Utah 1917, Rev. Stat. Utah 1933, 105-34-6.

The 1933 Revision has added the words "or information" after the word "indictment." No question is raised herein as to whether or not the addition has had any effect upon the meaning of the statute. The words were evidently inserted to cover both forms of procedure and remove the possibility of controversy over the matter whether a defendant were proceeded against by indictment or information.

The statute allows conviction for any lesser offense *necessarily included* in the offense charged in the indictment or information, but does not allow conviction of any lesser offense stated in the indictment unless it is *necessarily included* in the greater offense. The lesser offense must be a necessary element of the greater offense and must of necessity be embraced within the legal definition of the greater offense and be a part thereof.

For convenience, the statutory definitions of riot and unlawful assembly may be repeated:

"Any use of force or violence disturbing the public peace, or any threat to use such force or violence, if accompanied by immediate power of exeution, by two or more persons acting together and without authority of law is a riot." Comp. Laws Utah 1917, § 8218, Rev. Stat. Utah 1933, 103-50-2.

"Whenever two or more persons, assemble together to do any unlawful act, and separate without doing or advancing toward it, or do a lawful act in a violent, boisterous or tumultuous manner, such assembly is an unlawful assembly." Comp Laws Utah 1917, § 8221, Rev. Stat. Utah 1933, 103-50-5.

In an early case our statute on riot was analyzed and construed by an instruction to the jury and approved by this court in the case of *People* v. *O'Loughlin*, 3 Utah 133, 1 P. 653. The five essential or necessary legal elements covered

by the statute, without, however, the necessary expanded allegations of the acts characterizing and responding to the statutory elements were set forth and approved by the court at page 147 of the Utah report and page 659 of 1 Pacific as follows:

"From this definition we can determine what it is necessary to prove in order to make out a case of riot: (1) A riot cannot be committed by one person alone. The statute provides that there must be two or more persons. Therefore, in order to make out a case, it is incumbent upon the prosecution to prove beyond a reasonable doubt that there were two or more of the defendants engaged in what they allege was the riot. (2) That two or more persons acted without the authority of law, and that they so acted together. (3) That the two or more persons so acting without authority of law used or threatened to use either force or violence, either one or the other. (4) That the two or more persons so acting together without authority of law, and using or threatening to use force or violence, were accompanied with—had present with—them the immediate power of executing their purpose. (5) That two or more persons so acting together without authority of law, and using force or violence, or threatening to use force or violence, accompanied by immediate power of execution, disturbed the public peace."

What then are the necessary—essential—elements of the statutory definition of unlawful assembly that must be alleged and proved to constitute an unlawful assembly?

(1) Two or more persons must assemble together (the common element with riot is "two or more" persons).

(2) The purpose or intention of two or more persons is to do an unlawful act (in so far as the two or more persons are concerned and in so far as the definition has proceeded, this is the only common element). No overt act seems to be contemplated in the statute to make an assembly unlawful. The mere purpose or intention of doing an unlawful act, when and if properly expanded and characterized in the complaint, coupled with the act of assembling, would seem to be sufficient in so far as the charge is concerned, when followed by separation "without doing or advancing toward it," and as the section is alternative in its provisions,

the second or alternative definition of unlawful assembly is "Whenever two or more persons, assemble together" to "do a lawful act" if the purpose or intention is to do that act "in a violent, boisterous or tumultuous manner, such assembly is an unlawful assembly." The statute does not seem to contemplate the performance of any actual overt act other than that of assembling concurring with the intention on the part of those assembled to constitute an unlawful assembly. The important element in riot is the use or threatened use of force or violence without authority of law by two or more persons acting together or in concert—"concertedly." No such element is found in the statutory definition of unlawful assembly. Such force or threatened force or violence may be used either with or without an assembly. Two or more persons may meet or assemble today for the purpose or with the intention of doing an unlawful act at some future time and separate without doing it or advancing toward it, and not be guilty of riot, but still be guilty of unlawful assembly. The same persons subsequently might easily use force or violence and acting together (concertedly) without authority of law disturb the public peace. Under such circumstances two separate and distinct offenses would have been committed, and for both of which the participants could be punished.

A riot may occur and the participants be a part of a lawful assembly without converting the assembly into an unlawful assembly. The occasion and all the factors producing a riot may arise subsequent to the assembly. It would be rather a far-flung construction to say that a gathering assembled to witness a football or a baseball game, because two or more partisan enthusiasts in the assembly, becoming aroused over some decision of the referee or umpire and not having assembled with the intent of doing any unlawful act nor with the intent of resorting to any violent, boisterous, or tumultuous conduct, could convert such assembly into an unlawful assembly as a whole, or that the participants, although their conduct might be sufficient to make them guilty of riot,

under such circumstances they would of necessity as an included offense be guilty of unlawful assembly. Because a riot may occur at a lawful assembly by a minority of those assembled does not necessarily convert such assembly into an unlawful assembly. The possibility of an assembly lawful or unlawful, the latter a crime, leading into or being the antecedent event of a subsequent offense does not necessarily convert the former into an unlawful nor make the latter an included offense because either may furnish an occasion out of which a riot may develop. Nor is it necessary under the statute to either allege or prove the assembling of persons lawfully or unlawfully with the specific intent of doing some act to state the public offense of riot. Were that the case, the information in the instant case would be fatally defective in that it fails to allege or charge sufficient facts to constitute the crime of riot; there being no allegation of an unlawful assembly, and would likewise be fatally defective by reason of the failure to allege with what intent the defendants assembled.

It is apparent the intention of the Legislature as shown by the statute was to modify the common law and make it possible to charge the crime of riot and secure a conviction therefor without either alleging or proving an antecedent unlawful assembly out of which the riot grew. Instances will readily occur to the mind where if it were necessary to allege and prove unlawful assembly as defined by the statute that it would be impossible to secure a conviction. Likewise it seems clear that the offense of unlawful assembly as defined by the statute has for its purpose the "nipping in the bud" as it were, of incipient conspiracies, embryonic tumults and plottings against the public peace by two or more persons assembled together for such purposes only, although they separate without doing or advancing toward the unlawful act, or the lawful act in an unlawful manner.

Counsel for the state argued that the allegation in the information that the defendants were "acting together and concertedly" was the equivalent of the allegation of an un-

lawful assembly. We cannot concur in that view. No overt act other than those of the joint intention or purpose of doing the things prohibited by the statute, and the fact of assembling together, seem necessary to constitute an unlawful assembly. While under the charge of riot it would seem to make no difference whether or not there was an assembly or, if there were, whether or not it had a purpose or intention when it convened. It is the use of force or violence, disturbing the public peace, or a threat to use such force or violence, if accompanied by immediate power of execution, by two or more persons acting together in any way to make their actions effective in bringing about such things without authority of law that makes such participants guilty of riot.

We are therefore of the opinion:

First, that the crime of unlawful assembly as defined by the statute is not necessarily an included offense within the crime of riot as likewise defined by our statute.

Second, that the information does not state the necessary facts to constitute the crime of unlawful assembly.

Third, that the trial court committed error in instructing the jury to the effect that the crime of unlawful assembly was necessarily included within the crime of riot.

Fourth, that the information does state facts sufficient to constitute the statutory public offense of riot.

The judgment and verdict of the trial court should therefore be reversed, and the trial court is directed to set them aside and grant the defendant's motion for a new trial. Such is the order.

ELIAS HANSEN and EPHRAIM HANSON, JJ., concur.

STRAUP, Chief Justice (dissenting).

I dissent. I think the offense "unlawful assembly" is included in the offense charged in the information. It is conceded that the offense charged is riot. It further is conceded

that at common-law the offenses of "rout" and of "unlawful assembly" were included offenses of "riot." But it is argued that the common-law definition of riot is different from our statutory definition of riot. This chiefly, as is argued, because of the use of the word "assembled" or "assembling" in the common-law definition of riot and the absence of such words in the statutory definition of riot. It is contended that the common-law definition of riot is "a tumultuous disturbance of the peace by three or more persons, assembled and acting with a common intent; either in executing a lawful private enterprise in a violent and turbulent manner, to the terror of the people, or in executing an unlawful enterprise in a violent and turbulent manner," and that the statutory definition of riot is "any use of force or violence, disturbing the public peace, or any threat to use such force or violence, if accompanied by immediate power of execution, by two or more persons acting together and without authority of law." In the one the word "assembled" is used, in the other not. The common-law definition of riot is variously stated. Blackstone defines it, "where three or more actually do an unlawful act of violence, either with or without a common cause or quarrel, as if they beat a man, or hunt and kill game in another's park, chase, warren, or liberty, or do any other unlawful act with force and violence, or even do a lawful act as removing a nuisance in a violent and tumultutous manner."

Bishop (2 Bishop Criminal Law, § 1143) defines a riot to be "such disorderly conduct in three or more assembled persons, actually accomplishing an object, as is calculated to terrify others."

Lord Coke defines it that "riot in the common-law, signifieth when three or more do any unlawful act, as to beat a man or to hurt him in his park, etc., or to enter or take possession of another man's land, or to cut or destroy his corn, grass or other profit." Lord Coke's definition is quoted and approved in the case of *People* v. *O'Loughlin,* 3 Utah 133, 1 P. 653.

Other definitions are given that, "where three or more actually do an unlawful act of violence, either with or without a common cause or quarrel, or do a lawful act in violent or tumultuous manner." Notes, 54 C. J. 828.

The author there by notes also gives various statutory definitions that "any use of force or violence, or any threat to use force or violence if accompanied by immediate power of execution, by three or more persons acting together and without authority of law, is riot."

Again, "any use of force or violence disturbing the public peace or any threat to use such force and violence, if accompanied by immediate power of execution, by two or more persons acting together and without authority of law, is a riot." That, as is seen, is the definition of our statute.

Again, by other statutes, riot is defined as, "if three or more persons shall assemble together with intent to do any unlawful act with force and violence against the person or property of another, or do any unlawful act against the peace." Again, "the tumultuous disturbance of the public peace by an unlawful assembly of three or more persons in the execution of some private object."

In the text, 54 C. J. supra, the author further states that "the modern definition of riot is in harmony with and follows the common law definition. It has no technical import, as distinguished from its signification when used in the everyday affairs of life, and the legal meaning of the word corresponds to the meaning given to it in ordinary usage," etc.

Now, what I gather from all this is that there is no substantial difference between the definitions of riot as defined at common law and as defined by our statute, for that the essential element of riot as defined both at common law and by our statute is a tumultuous disturbance of the peace to the terror of the people by threats or the use of force or violence by three or more persons (under the statute, two or more), acting together without authority of law and with a common purpose and intent. If, under the common-law

definition of riot, the offense of unlawful assembly was included, as is conceded it was, I think it also is included in the statutory definition of riot.

I have already stated the statutory definition thereof. Following that, the statute in the next section defining "rout" is, "whenever two or more persons, assembled and acting together, make any attempt or advance towards the commission of an act which would be a riot if actually committed, such assembly is a rout." Following that, the statute defining "unlawful assembly" is, "whenever two or more persons assemble together to do any unlawful act, and separate without doing or advancing toward it, or do a lawful act in a violent, boisterous or tumultuous manner, such assembly is an unlawful assembly." Comp. Laws Utah 1917, tit. 119, c. 38, §§ 8218, 8220, 8221, all related to and under the general head of "Crimes against Public Peace." It is quite apparent that the three offenses, riot, rout, and unlawful assembly, as by the statute defined, are allied and kindred offenses. In speaking of the three offenses, the author in 54 C. J. 829 says:

"Riot, rout, and unlawful assembly are kindred offenses and the greater includes the less; yet the several offenses are clearly distinguishable each from the others. A rout differs from a riot in that the persons do not actually execute their purpose, but only make some motion towards its execution; but what degree of execution of their purpose will convert a rout into a riot may often be difficult to determine. An unlawful assembly differs from a riot in that if the parties assemble in a tumultuous manner, and actually execute their purpose with violence, it is a riot; but if they merely meet upon a purpose, which, if executed, would make them rioters, and, having done nothing, they separate without carrying their purpose into effect, it is an unlawful assembly."

So, here, under the statute, if two or more persons, acting together without authority of law, disturb the peace by the use of force or violence, etc., they are guilty of riot; if assembled and acting together, make an attempt or advance towards the commission of the unlawful act, they are guilty

of rout; if assembled together to do an unlawful act, but separate without committing it or advancing towards the commission of it, or do a lawful act in a violent, boisterous, or tumultuous manner, the offenders are guilty of an unlawful assembly. In the first, the unlawful act is committed; in the second, only attempted or an advance made toward it; and, in the third, a separation of the assembled offenders without committing the unlawful act or attempting to commit it or advancing towards it, or where they do a lawful act in a violent, boisterous, or tumultuous manner. I think the three sections of the statute defining riot, rout, and unlawful assembly, the defined minor offenses following the defined greater, and all kindred offenses, should be considered together as degrees of a tumultuous disturbance of the peace.

If an unlawful assembly, the penalty of which is a misdemeanor, is a kindred or lesser offense of riot, the penalty of which is a felony, then language which charges the greater also charges the lesser included offense, just as language charging murder in the first degree also charges all included lesser offenses, second degree murder, and manslaughter, both voluntary and involuntary. Admittedly, the language of the information charges a riot. If the information did not charge riot, then the information would be searched to see whether it charged rout or unlawful assembly, just as, if an information did not sufficiently charge first degree murder, it would be searched to see whether it charged second degree murder or only manslaughter, either voluntary or involuntary. However, if the information is broad enough for the greater offense, it also is broad enough for all included lesser offenses. In such case it is unnecessary to descend to allegations constituting the particular elements of the lesser included offense or offenses. Of course, if no public offense is stated, then nothing is stated, and neither evidence nor verdict can cure the information or add anything to it. So too, if one is convicted of an offense not charged in an information, he is not properly convicted, and the conviction in no sense aided by evidence or verdict. If, however, the

offense of unlawful assembly of which the defendant was convicted is a lesser offense included in the greater offense of riot charged in the information, then he was convicted of an offense charged in the information. But there lies the rub. By the prevailing opinion I think it more assumed than demonstrated that the offense of unlawful assembly is not a lesser offense included in the charged greater offense of riot.

The language of the information is that the defendant with about fifteen other named persons, and with divers other persons whose names were unknown, at a stated time and place, "acting together and concertedly" did, without authority of law, willfully, unlawfully and feloniously use and threaten to use force and violence in disturbing the public peace, said threats to use force and violence being then and there accompanied by immediate power of execution, and said persons acting as aforesaid, among other things," willfully, unlawfully, etc., with force and violence obstruct and prevent the sheriff from performing duties of his office, and willfully, unlawfully, etc., beat, bruised and ill-treated peace officers, and with force and violence broke and damaged doors leading into the sheriff's office, and willfully, unlawfully, etc., made great noise, tumult, and disturbance.

Under such information the jury, if the evidence warranted and the jury so convinced, could have found that the defendant with divers persons or some of them, "acting together and concertedly," committed the charged unlawful act or acts. But if the evidence, according to the judgment of the jury, did not justify such a finding, they, if the evidence justified and the jury so convinced, could find that the defendant with divers other persons or some of them, "acting together and concertedly," at the time and place stated, came together or assembled together to commit one or more of the charged unlawful acts, such as to obstruct and prevent the sheriff from performing the charged duties of his office, but separated without committing or attempting to commit

such or any of the charged unlawful acts, or advancing towards the commission thereof, or could find that all that the defendant did was that he with divers other persons or some of them, "acting together and concertedly," willfully and unlawfully, and in a violent, boisterous, or tumultuous manner, made a great noise and disturbed the peace, all of which by language is included in the information, and which, as defined by the statute, constitutes an unlawful assembly. The language of the information that the defendant with divers other persons, "acting together and concertedly," willfully and unlawfully, etc., committed the charged unlawful act or acts, reasonably, if not necessarily, implies that they came together, convened, or met together, "assembled together." It is difficult to perceive how the defendant with divers other persons could act together and concertedly, without coming together into one place or company, or as having met or convened together. That is what assembling means. Standard Dictionary.

Lastly, it is argued that no design, intent, or purpose of any unlawful assembly is alleged in the information. The intent and purpose of the defendant with divers other persons, "acting together and concertedly," is rather profusely alleged. That is apparent. In the next place, the language in the information, acting together "and concertedly," implies, to arrange, devise, to plan, to contrive, an agreement together of persons or of movements to a single purpose, arranged or agreed upon in concert or for a common purpose. Standard Dictionary. But to show an unlawful assembly of two or more persons it is not essential that any prior design, intent, or purpose be alleged, or shown either by direct or inferential evidence. Two or more persons, without any wrongful design or intent or purpose whatsoever and with the best motives, with prayer and hymn books in their hands and only for religious worship, may attend church, but if, in the progress of the service, "acting together and concertedly," they in a violent and boisterous or tumultuous manner disturb the peace, they under the statute are guilty of an

unlawful assembly. Says the author in 2 Wharton's Criminal Law (12th Ed.) 2189, that: "Persons lawfully assembled may become an unlawful assembly if they conduct themselves with a common purpose in such a manner as would have made their assembling unlawful if they had assembled in that manner for that purpose; and this has been held to be the case with disorder got up suddenly, though concertedly, at a town meeting, and at a social assembly for dancing." And that is what our statute in effect says defining an unlawful assembly.

I thus am of the opinion that the judgment of the court below should be affirmed.

FOLLAND, Justice.

I concur in the dissenting opinion of Mr. Chief Justice STRAUP.