STATE of Utah, Plaintiff and
Respondent,

v.

Ronnie S. BROOKS, Defendant
and Appellant.

No. 16729.

Supreme Court of Utah.

May 28, 1981.

G. Fred Metos, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Earl F. Dorius, Salt Lake City, for plaintiff and respondent.

MAUGHAN, Chief Justice:

Defendant was convicted by a jury of the crime of burglary in a dwelling, a felony of the second degree, Section 76–6–202, Utah Code Annotated, 1953, as amended. The trial court, in accordance with its statutory prerogative, Section 76–3–402(1), sentenced him for the next lower category, a third degree felony, to the Utah State Prison for an indeterminate term not to exceed five years. Defendant appeals therefrom. The conviction is reversed and the matter is remanded for a new trial. All statutory references are to Utah Code Annotated, 1953, as amended, unless otherwise indicated.

Defendant was accused of unlawfully entering with an intent to commit theft the basement apartment of Harold Obriant at approximately 11:00 p. m. on June 26, 1979. The resident manager of the apartment complex, Diana Triptow, identified defendant. She testified defendant rang her doorbell sometime between 10:30 and 10:45 p. m., seeking one Vanessa Jackson. Mrs. Triptow informed him the lady lived upstairs in 6–C. Defendant was dressed in gray jogging pants and a silver necklace; he was not wearing a shirt. He had a red ten-speed bicycle beside him. Subsequently, Mrs. Triptow observed defendant walking back and forth in front of her living room window, then he proceeded to walk around the building. Thereafter, she heard the living room window screen rattling on the apartment below her, which was occupied by the Obriants. Then she heard and observed defendant remove the screen from the northeast bedroom of Obriants and enter the apartment. Approximately fifteen minutes later, Mrs. Triptow observed him leave through the same window.

In the interim, Mrs. Triptow summoned the police, who responded in approximately eight to ten minutes. The police talked briefly with Mrs. Triptow and drove about in the parking lot, which was situated in close proximity to the window defendant had entered. The police, however, failed to inspect the window where the entry had been effected. The police instructed Mrs. Triptow to call them again if she saw or heard anything. Almost as soon as the police had departed, Mrs. Triptow heard the bedroom window in the Obrients' apartment open, and defendant emerged therefrom. She again summoned the police, who responded in two to three minutes.

Mrs. Triptow testified that the screen to the bedroom window was lying on the ground and had been bent to remove it. The police located the bicycle, which was concealed near some bushes. The police took the bicycle and put it inside the door in the hallway of the building. While the police were elsewhere in the complex, defendant returned and stated "Tell Able I came to get my bike." A bystander ran to summon the police, but defendant had disappeared. Defendant was arrested several weeks later and charged with burglary.

The victim, Mr. Obriant, was sleeping in the other bedroom in his apartment at the time of the entry. He had substantially impaired hearing, and he initially learned of the events that had transpired when his wife returned from her place of employment and awakened him to inquire what was wrong with the lights. Mr. Obriant testified the screens were intact when he retired. When he awakened one screen in the living room and one in the northeast bedroom had been removed. In the same bedroom, three or four switches in the power panel had been turned off; so there were no lights in the bedrooms and kitchen. The window in this bedroom had been partially opened to promote ventilation, and the door was secured in an open position with a door stop. To reach the power panel, it was necessary to remove the door stop and partially close the door. Nothing was taken from the Obriants' apartment, although there were valuable items in the northeast bedroom, such as, jewelry, a portable television, and a clock. Mr. Obriant testified that there were three rings on a chest of drawers, two were in ring boxes and one was loose. Initially, it appeared that one ring had been taken, but it was subsequently located under the chest. Mr. Obriant testified that the room had not been dusted for a week, and he did not observe on the chest any fingerprints, smudges, or dust removed from someone touching it.

The investigating police officer, Russell Adair, was unable to locate any fingerprints. He testified the dust had been disturbed on the window sill, but there were no prints, just smudges.

Based on the foregoing evidence, defendant moved at the close of the State's case to reduce the charge to criminal trespass, Section 76–6–206, on the ground that the State had failed to show the entry was made with an intent to commit theft. To sustain his motion defense counsel cited the presence of defendant in the apartment for some time (Mrs. Triptow testified fifteen minutes) and with the exception of the ring box being knocked on the floor no item in the room had been moved. The State responded that from the evidence the trial court could not rule as a matter of law that the entry was not made with an intent to commit theft. The State pointed to the tampering with the lights to both bedrooms, the displacement of the ring box from its location on the dresser, and the unobstructed view from the bedroom of the parking lot, where the marked patrol car circled in surveillance of the building. The State argued that defendant could not take heavy items since his transportation was on a bicycle. Further, it would have been unwise to remove any items with the presence of the police in the vicinity and the potentiality of being apprehended. The State urged the entry with an intent to commit theft, under the evidence, was a jury question. The trial court denied defendant's motion but stated there would be an instruction on the lesser offense of criminal trespass.

The trial proceeded, and defendant presented his evidence concerning his alibi, viz., he was attending a barbeque in Rose Park at the time of the alleged offense. The matter was submitted to the jury, and defendant was found guilty of the crime of burglary.

On appeal defendant contends the trial court erred when it denied the motion to reduce the charge to criminal trespass on the ground the State had failed to adduce sufficient evidence proving the requisite intent for burglary.

Section 76–6–202(1) provides:

"A person is guilty of burglary if he enters or remains unlawfully in a building or any portion of a building with intent to commit a felony or theft or commit an assault on any person."

Section 76–6–201(3) provides:

"A person 'enters or remains unlawfully' in or upon premises when the premises or any portion thereof at the time of the entry or remaining are not open to the public and when the actor is not otherwise licensed or privileged to enter or remain on the premises or such portion thereof."

■ The elements of the crime of burglary are: (1) the act of entering the building, and (2) the specific intent to commit a felony, theft, or assault therein. The act of entering alone does not give rise to an inference that the actor entered with the requisite intent to constitute burglary. The intent to commit a felony, theft, or assault must be proved, or circumstances shown from which the intent may reasonably be inferred.[1] It is the intent to commit a theft, and not the actual theft, which is material. There are reasons why the larceny may not be completed, such as, a change of intention after entering, the failure to find an appropriate object to steal, or detec-

tion. In cases where there be an actual stealing, the intention may be more readily apparent, however, the failure to commit a theft, after entry with the intent, is no defense to the crime of burglary.[2]

■ Since the intent to commit a theft is a state of mind, which is rarely susceptible of direct proof, it can be inferred from conduct and attendant circumstances in the light of human behavior and experience. Under this premise, the authorities uniformly agree that where one breaks and enters the dwelling of another in the night-time, without the latter's consent, an inference may be drawn that he did so to commit larceny.[3] This point is illustrated in *People v. Lamica*,[4] wherein defendant made an unauthorized entry at 3:00 a. m. by removing the screen on the open window of the victim's bedroom. Defendant fled at the approach of the manager of the apartment building. Defendant asserted the evidence was insufficient to support his conviction. The Court stated that the evidence indicated defendant had made an unauthorized entry into the apartment. The surrounding circumstances, i. e., the manner of entry, the odd hour, and the sudden flight upon being discovered, supported the inference that the required intent to commit theft or a felony was present. Nothing more is required to support a conviction for burglary than proof of an uninvited entry under circumstances which support the conclusion that a burglarious intent was present.

■ This Court has defined an "inference" as a logical and reasonable conclusion of the existence of a fact in a case, not presented by direct evidence as to the existence of the fact itself, but inferred from the establishment of other facts from which by a process of logic and reason, based upon

---

1. *Peck v. Dunn*, Utah, 574 P.2d 367, 370 (1978).

2. *State v. Baldwin*, 29 Utah 2d 318, 509 P.2d 350 (1973); *State v. Clements*, 26 Utah 2d 298, 488 P.2d 1044 (1971); *State v. Syddall*, 20 Utah 2d 73, 433 P.2d 10 (1967).

3. *State v. Hopkins*, 11 Utah 2d 363, 365, 359 P.2d 486 (1961); *State v. Tellay*, 7 Utah 2d 308, 324 P.2d 490; *State v. Dusch*, 17 Ariz.App. 286, 497 P.2d 402 (1972); *Mirich v. State*, Wyo., 593 P.2d 590 (1979); *People v. Daniels*, 145 Cal. App.2d 615, 302 P.2d 831 (1956).

4. 274 Cal.App.2d 640, 79 Cal.Rptr. 491 (1969).

common experience, the existence of the assumed fact may be concluded by the trier of fact.[5] An inference does not disappear from a case but goes to the fact trier to be weighed along with the contravening evidence because all inferences, which are capable of being drawn from evidence intrinsically containing the seeds from which logical deductions may be made, rest on basic facts which remain in the case.[6]

In the instant case from the defendant's unauthorized entry into Obriants' darkened apartment by forcible means through a bedroom window during the late evening hours, an inference may be drawn that he did so with an intent to commit theft. This inference must be weighed by the trier of fact with the contravening evidence. Therefore, the trial court did not err in denying defendant's motion to reduce the charge of burglary to criminal trespass and submitting the issue to the jury.

Defendant further contends the trial court erred in refusing to excuse two members of the jury panel for cause, which had the effect of forcing counsel to use the first two peremptory challenges to remove these people from the jury.

A jury panel of twenty members was drawn. During the voir dire of the jury panel the trial court asked whether anyone felt he could not afford to defendant the presumption of innocence to which he is entitled under the law. Mr. Snell responded that he had been burglarized twice, and he felt bitter about that particular charge; however, he would try to have an open mind. The trial court then queried whether he felt the fact that he'd been burglarized would in any way affect his thinking or attitude concerning the outcome of the trial. Mr. Snell replied that it might, he could not say for sure. The trial court then stated it didn't want Mr. Snell sitting if he had some preconceived notion or idea concerning defendant's guilt or innocence, even before the evidence had been heard. Mr. Snell replied that he had not, and he would

listen to the evidence and return a fair and impartial verdict based on the evidence in the case.

The trial court continued the voir dire and asked if anyone else could not afford the defendant the benefit of the presumption of innocence. Mrs. Scouten responded that she had been the victim of an armed robbery and assault in her home, and the gentleman responsible was allowed to go without punishment, and that she had "a very strong feeling about that." The trial court queried whether that circumstance would make her feel defendant was guilty before she heard the evidence. Mrs. Scouten responded:

"There again, I would try very hard to be honest but I have a very emotional link with the type of situation involved."

The voir dire continued:

The Court: "I'm sure none of us like crime and none of us like to see guilty people go free.

"I'm sure of that but are you willing—are you willing to afford this defendant the benefit of the presumption of innocence? Are you willing to presume he's innocent until you are convinced by the evidence that he's guilty and beyond a reasonable doubt?"

Delores Scouten: "I would presume he's innocent but the evidence is something that I will emotionally respond to. Let me put it that way."

The Court: "Let me ask it another way. Do you feel that the circumstances that you have experienced would in any way affect your thinking or the attitude concerning the outcome of this trial even before you have heard the evidence?"

Delores Scouten: "I can't honestly say. I feel that because of the situation, I might be inclined to be impartial.[sic?] There again, I'll give him every benefit of the doubt but with my case—."

The Court: "He's entitled to the benefit of the presumption of innocence under the law. That's the law, but do you feel that you can't abide by it?"

5. *Wyatt v. Baughman*, 121 Utah 98, 109, 239 P.2d 193 (1951).

6. Id. at pp. 107, 110, 239 P.2d 193.

Delores Scouten: "I can't make an honest decision within my heart, here again, until the evidence is presented. I just felt the need to make you aware of that."

The Court: "Do you feel you could return a fair and impartial verdict in this matter based upon the evidence that's presented during the trial and the law as I will state to you?"

Delores Scouten: "Okay. Yes, I think I could do that."

The Court: "Thank you. Are there any others of you who feel you cannot afford to the defendant the benefit of the presumption of innocence that he's entitled to under the law. The record may show no other hands are raised."

The record indicates that defense counsel made a motion to excuse jurors Snell and Scouten for cause, actual bias. The trial court denied the motion on the ground that he felt the jurors had been sufficiently rehabilitated. Defense counsel exercised his four peremptory challenges, Section 77–30–15(b), the first two of which were used to remove jurors Scouten and Snell.

This Court has consistently ruled that the failure to excuse a juror for cause and thus to compel a party to exercise a peremptory challenge to remove the juror was prejudicial.[7]

In *State v. Brooks*[8] this Court stated: "Article I, Section 12, Constitution of Utah, in mandatory terms, guarantees the accused in a criminal proceeding the right to a trial by an impartial jury. To comply with this command, the Legislature enacted Chapter 30, Title 77, in the Code of Criminal Procedure. To effect the purpose of a trial by an impartial jury, the legislature provided the accused with the right to challenge a juror for actual bias. Section 77–30–18(2), defines 'actual bias' as 'the existence of a state of

mind on the part of the juror which leads to a just inference in reference to the case that he will not act with *entire impartiality.*' (Emphasis supplied.)

" 'Impartiality' is not a technical conception but is a state of mind; it is a mental attitude of appropriate indifference."

In *State v. Bailey*,[9] this Court applied the following test for impartiality:

"Light impressions which may fairly be supposed to yield to the testimony that may be offered; which may leave the mind open to a fair consideration of that testimony, constitute no sufficient objection to a juror; but those strong and deep impressions which will close the mind against the testimony that may be offered in opposition to them; which will combat that testimony and resist its force, do constitute a sufficient objection to him."

There are cases which illustrate the type of strong and deep impressions which indicate an actual bias. In *Crawford v. Manning*[10] the prospective juror stated she had "strong feelings" concerning anyone who would sue to recover money for the death of another. However, she responded in the affirmative when queried by the trial judge whether she could render a verdict free of bias and prejudice. This Court stated:

"One doubts that a person *who harbors strong feelings* concerning anyone who would sue to recover money for the death of another could be a fair and impartial juror. She should have been excused peremptorily and one of the eight surplus jurors placed in the box."[11]

In *Jenkins v. Parrish*[12] the prospective juror expressed a partiality in favor of doctors; defendant was a doctor. However, the juror conceded that she would not be inclined to give more weight to the doctor's

---

7. *Crawford v. Manning*, Utah, 542 P.2d 1091 (1975); *State v. Moore*, Utah, 562 P.2d 629 (1977); *Jenkins v. Parrish*, Utah, 627 P.2d 533 (1981).

8. Utah, 563 P.2d 799, 801 (1977).

9. Utah, 605 P.2d 765, 767 (1980).

10. Note 7, supra.

11. At pp. 1092–1093 of 542 P.2d.

12. Note 7, supra.

testimony, if it were not in accordance with the evidence. This Court stated that the juror's concession did not obviate the prejudice. This court observed that it viewed the trial court's exercise of discretion in selecting jurors, who were fair and impartial, within the context that it was a simple matter to obviate any problem of bias simply by excusing the prospective juror and selecting another. This Court stated:

"Although Mrs. Eddins expressed a desire and ability to remain fair and impartial once all the evidence was presented, her statements do not alter the fact that she indicated her background would cause her to place greater credence in a doctor's testimony simply because of his status as a doctor. A statement made by a juror that she intends to be fair and impartial loses much of its meaning in light of other testimony and facts which suggest a bias...."

This Court ruled that Mrs. Eddins' admissions of express bias should have resulted in a successful challenge for cause, and forcing plaintiff to use one of his peremptory challenges to remove the juror resulted in prejudicial error.

■ Although the courts do not endeavor to practice psychoanalysis, under Section 77–30–18(2) actual bias is to be determined by the potential juror's state of mind. By necessity this must be ascertained by the expressions of attitudes, opinions, and feelings of the juror. Whenever the voir dire evokes a strong emotional response, there is posed a warning that the juror may not have a mental attitude of appropriate indifference to the party or cause before the court. In assessing this response, the statutory test is whether the expressed state of mind of the juror leads to a just inference in reference to the cause or parties that he will not act with entire impartiality. In other words, based on the juror's expressed feelings, attitudes, and opinions, the trial court must determine by a process of logic and reason, based upon common experience, whether the juror can

stand in attitude of indifference between the state and the accused. Furthermore, when a juror has expressed an attitude indicating prejudice or bias, such cannot be attenuated by the juror's determination that he can render an impartial verdict. The juror cannot be the judge of his qualifications; this function is the responsibility of the trial court.

■ In the instant case both potential jurors, Mr. Snell and particularly Mrs. Scouten, expressed strong feelings of anger and frustration arising out of their personal experiences as victims of crimes similar to this cause. They both indicated that in assessing the evidence their thinking would be affected by their adverse emotional responses to their own experiences. The feelings expressed indicated that these prospective jurors retained in their minds the emotional residue of their personal trauma, which would compromise their capacity for objectivity in the trial of this case. The state of mind of these jurors, as revealed by the facts in this case, leads to the just inference in reference to the cause that they could not act with *entire impartiality*. Their reluctant disclaimers of partiality run counter to human nature and appear, particularly in the case of Mrs. Scouten, to be impelled by a desire to attain approval. The trial court abused its discretion by not excusing these jurors for cause.

■ Defendant finally contends that the trial court erred in its refusal to give an instruction to the jury on reasonable alternative hypothesis on the ground that the element of specific intent to commit theft was proved by circumstantial evidence. As observed in the first point in this opinion, the specific intent to commit theft at the time of the unlawful entry constitutes a state of mind, which is rarely susceptible of direct proof and must be inferred from the totality of the circumstances. Since the facts established in this case were proved by a combination of direct and circumstantial evidence concerning each element of

the crime of burglary, the requested instruction was not warranted.[13]

STEWART, HOWE and OAKS, JJ., concur.

HALL, J., concurs in the result.

---

**13.** *State v. Bender*, Utah, 581 P.2d 1019 (1978); *State v. Fort*, Utah, 572 P.2d 1387 (1977); *State v. Hopkins*, note 3, supra.