STATE of Utah, Plaintiff and
Respondent,

v.

Carole J. HEWITT and Boyd L. Hewitt,
Defendants and Appellants.

No. 19419.

Supreme Court of Utah.

Sept. 6, 1984.

Martin V. Gravis, Merlin G. Calver, Ogden, for defendants and appellants.

David L. Wilkinson, Atty. Gen., Salt Lake City, for plaintiff and respondent.

HALL, Chief Justice:

Defendants appeal their conviction of distribution of a controlled substance (10 pounds of marijuana) pursuant to U.C.A., 1953, § 58–37–8(1)(a)(ii) (Supp.1983). Defendants argue that (1) the prosecution used or failed to correct false or perjured testimony in violation of their due process rights; (2) the trial court erred in refusing to dismiss two veniremen for cause; and (3) the trial court erred in refusing to give defendants' requested jury instructions defining "distribution for value."

On February 17, 1982, Detective Kelly Call, a member of the Northern Region Drug Task Force, contacted Frank Totter, a person from whom Call had previously purchased small amounts of marijuana, and asked to buy 10 pounds of marijuana. The next day Totter told Call he could supply the marijuana. Call met Totter at Totter's house in Ogden that afternoon. The two then went to another house on Canyon Road in Ogden and entered the house.

Another task force officer, Detective Alexander, was conducting surveillance of the Canyon Road house. He first observed Totter arrive and enter the house. Next, Alexander observed a dark blue Cadillac pull into the driveway and defendant Carole Hewitt get out. She removed a dark blue suit bag from the car and carried it into the house. Defendant Boyd Hewitt, after parking the Cadillac on the street in front of the house, also entered the Canyon Road house. A few minutes later Totter left the house; the Hewitts remained.

After Detective Call had given Totter the money in payment for the marijuana, Call arrested Totter and the defendants.

These facts are generally agreed upon by all parties. However, the plaintiff's and defendants' versions of the remaining facts are diametrically opposed.

Detective Call's testimony is the sole testimony for the prosecution as to what transpired after his and Totter's entry into the Canyon Road house. Call had been fitted with a bug taped to his body that failed to work. Therefore, none of the surveillance officers were able to corroborate the events that took place in the house.

Call's version of the events is as follows: Call met Totter at Totter's house. Totter said he would introduce Call to Totter's suppliers at the Canyon Road house. They then drove to the Canyon Road house in Call's car, and Call met the defendants in the living room. Totter produced the blue suit bag that Mrs. Hewitt had been carrying and took it into the kitchen with Call and defendants accompanying him. Call testified that the bag had a strong smell of marijuana emanating from it.

Totter placed the suit bag on the kitchen table and Call removed 20 half-pound bags of marijuana from it. Totter put the small bags in a blanket after Hewitt said he wanted the suit bag back because it was a good way to transport large quantities of marijuana without arousing suspicion if stopped by police. Mrs. Hewitt agreed. Totter and Call then took the full blanket to Call's car.

Call took $9,600 from the car and, after reentering the kitchen where the defendants were waiting, gave the money to Totter. Totter began counting the money at the kitchen table. Mrs. Hewitt sat beside him, and Mr. Hewitt stood where he could observe the counting. After about one-third of the money had been counted with both defendants observing, Call drew his

weapon and arrested Totter and both Hewitts.

Both Frank Totter and Carole Hewitt testified at trial. Their versions were parallel. After his arrest, Totter entered a plea of guilty to distribution of marijuana and was sentenced to a term at the Utah State Prison. Totter denied that he told Call that he would be introduced to Totter's suppliers at the Canyon Road house. Totter also denied that Carole and Boyd Hewitt were his suppliers and maintained that the defendants just happened to be in the wrong place at the wrong time.

Both Totter and Carole Hewitt testified that Totter's business partner, Chris Granth, occupied the Canyon Road house and that the Hewitts had stopped by to see him. Granth had contracted with the Hewitts to do some tree work on property the Hewitts owned in Salt Lake, and the Hewitts were simply inquiring as to when Granth anticipated the work would be completed. Totter told the Hewitts that Granth would be home shortly and that they were welcome to wait. He also asked the Hewitts if they would be willing to look after his young son who was with him, since he had to leave for a short time. The Hewitts agreed to do so.

Totter then left to pick up Call. After returning to the Canyon Road house, Totter introduced Call to the Hewitts, who were with Totter's son in the living room. Totter then took Call into the kitchen, where the marijuana was produced. The Hewitts did enter the kitchen during the transaction to retrieve Totter's son, who had followed his father.

Totter and Hewitt testified that the blue suit bag contained work clothes that Totter and Granth had left at the Hewitts, which the Hewitts were returning. Totter took the bag into the basement, emptied the clothes from it and put the marijuana that he had previously transported to the Canyon Road house into it. When the Hewitts walked into the kitchen, Mr. Hewitt saw the bag on the table and told Totter he wanted it back. Totter then transferred the packages to a blanket, which Call took to his car. Call returned with the money and a package, gave it to Totter and immediately arrested Totter and the defendants.

Defendants first contend that certain discrepancies between Detective Alexander's testimony at the preliminary hearing and at trial amounted to false or perjured testimony that affected the judgment of the jury and constituted unfair surprise to the defendants.

Defendants rely on three discrepancies: (1) At the preliminary hearing, Alexander testified that during his surveillance of the Canyon Road house he was parked approximately 200 to 250 yards from it. At the trial, he testified he was parked approximately 150 yards away. (2) Alexander testified he watched the Canyon Road house with binoculars. At the preliminary hearing he said he thought they were $7 \times 35$. At trial he testified they were $10 \times 50$. (3) At the preliminary hearing and the trial, Alexander testified that Carole Hewitt exited the Cadillac carrying a blue suit bag. At trial, he also said the bag looked as if it had something packed in the bottom.

 It is undisputed that a criminal conviction procured by the knowing use of false testimony is fundamentally unfair and violative of the due process clause of the Fourteenth Amendment and Art. 1, § 7 of the Utah State Constitution.[1] The conviction must be vacated if there is a reasonable likelihood that the false testimony could have affected the judgment of the jury.[2]

 However, mere inconsistencies between the testimony of a witness for the prosecution is not enough to constitute per-

---

**1.** *Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935); *Anderson v. United States,* 403 F.2d 451 (7th Cir.1968); *Walker v. State,* Utah, 624 P.2d 687 (1981).

**2.** *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *State v. Shabata,* Utah, 678 P.2d 785 (1984).

jury.[3] There must be some palpable contradiction or untruth.[4] The discrepancies cited by the defendants do not rise to this standard.

Further, defendants had available to them the recorded transcript of the preliminary hearing and had ample opportunity to cross-examine the witness on the inconsistencies.[5] Defendants were not in any way prejudiced since defendants' counsel recognized the discrepancies between Alexander's testimony at the preliminary hearing and at trial and cross-examined him extensively concerning those discrepancies.

■ Finally, this Court has consistently held that the weight and credibility to be given the testimony of any witness is a question for the jury.[6] Where, as here, defendants' counsel pointed out the inconsistencies in the testimony and cross-examined the witness as to those inconsistencies, it was up to the jury to determine the weight and credibility to be given the testimony of Detective Alexander.

Defendants next contend that the trial court erred in refusing to dismiss two veniremen for cause. During *voir dire,* three prospective jurors gave responses that defendants contend indicated actual bias. Defendants challenged all three for cause. The trial judge dismissed one prospective juror, but retained the remaining two, Holliday and Butler. Defendants then exercised two of their peremptory challenges to have Holliday and Butler removed. During the course of *voir dire,* defendants exercised all of their peremptory challenges.

U.C.A., 1953, § 77–35–18(e)(14) allows a challenge for cause upon the grounds

"[t]hat a state of mind exists on the part of the juror with reference to the cause, or to either party, which will prevent him from acting impartially and without prejudice to the substantial rights of the party challenging ...."

■ A juror who has formed "strong and deep impressions which will close the mind against the testimony that may be offered in opposition to them; which will combat that testimony and resist its force" should be excused for cause.[7]

■ In selecting a fair and impartial panel of jurors, some deference must be accorded the discretion of the trial court as to whether an individual juror can remain impartial.[8] However, this Court has consistently held that it is prejudicial error [9] to compel a party to exercise a peremptory challenge to remove a juror who should have been excused for cause.[10]

■ During *voir dire,* Holliday stated he had training in drug abuse as an officer in the Army and was involved in some drug abuse and distribution investigations of people who served under him. He also stated that he had friends who were police officers in the military stationed overseas or elsewhere in the United States, but had no friends among local officers. He stated he had gone to high school 20 years previously with one of the detectives on the case, but had no social friends among the local officers. Holliday, upon questioning by the judge, unequivocally stated he would look at the facts of the case impartially.

---

3. *Anderson, supra* n. 1, at 454; *State v. Azure,* 181 Mont. 47, 591 P.2d 1125, 1129 (1979); *Taylor v. State,* Okla.Crim., 555 P.2d 1073, 1078 (1976).

4. *See Anderson, supra* n. 1.

5. *See Taylor, supra* n. 3.

6. *See, e.g., State v. Wilson,* Utah, 608 P.2d 1237 (1980).

7. *State v. Bailey,* Utah, 605 P.2d 765, 767 (1980) (quoting *Reynolds v. United States,* 8 Otto 145, 98 U.S. 145, 25 L.Ed. 244 (1878)).

8. *State v. Lacey,* Utah, 665 P.2d 1311 (1983); *Jenkins v. Parrish,* Utah, 627 P.2d 533 (1981).

9. Since the defendants in this case exercised all of their peremptory challenges, we need not address the issue of whether it would have been harmless error had defendants not exercised all of their peremptory challenges.

10. *State v. Brooks,* Utah, 631 P.2d 878 (1981); *Bailey, supra* n. 7; *Parrish, supra* n. 8.

A statement made by a prospective juror that he intends to be fair and impartial loses its meaning in light of other testimony or facts that suggest a bias.[11] However, in the case of Holliday there are no other additional testimonial facts in the record that suggest Holliday had an impression so strong and deep as to constitute bias. Therefore, the trial court did not abuse its discretion in refusing to excuse Holliday for cause.

■ The trial court did err in refusing to excuse Butler for cause. During *voir dire*, prospective jurors were asked if there were any reason they could not try the case so that the verdict could be a true and just verdict. Mr. Butler replied: "As far as being impartial in the case, I—if the evidence did point to their not being guilty I could be impartial. However, if the evidence came anywhere near being close, then I would feel like the detectives deserve the benefit of the doubt as far as the evidence."

The trial judge, after a number of exchanges between him and Butler, elicited a general and indefinite response from Butler suggesting that Butler could try the case fairly. However, upon later examination by defense counsel, Mr. Butler stated:

Well, before I—before I understood exactly what he meant, I think that I could judge fairly in essence, but I just don't know. It just seems like with the criminal law the way it is, that the—I don't know. I have a problem with the criminal over the police officer, unless I feel like the evidence that's being presented that they're—it isn't sufficient or circumstantial or whatever. Then I wouldn't have any problem. But it seems like the evidence, if it is in favor of the State, then I would probably go in favor of the State.... It's just that I hear about all of the people—I don't want to send anybody that's innocent to the penitentiary, but I also think the police officers work

hard and a lot of times their efforts, even though legal, are refuted in court, and I just have a problem with that. I just feel like they work awful hard and get only a percentage of the cases, and some of these cases don't even—aren't even successful even though the people are guilty.

Mr. Butler later stated: "In essence, I would prefer not to be here." The trial judge did not attempt to rehabilitate Butler following these responses.

This Court has, in previous cases where prospective jurors have indicated a strong and deep impression, ruled that failure to dismiss these jurors for cause results in prejudicial error. For example, in *Jenkins v. Parrish,*[12] a medical malpractice suit, a prospective juror indicated she would favor the defendant-physician's testimony. Even though that juror expressed a desire and ability to remain fair and impartial, the Court held that her admission of bias should have resulted in a successful challenge for cause.

In *Crawford v. Manning,*[13] a wrongful death action, a prospective juror said that she had strong feelings about anyone who would sue to recover money for the death of another. She also stated she could render a verdict free of bias and prejudice. This Court, in holding the trial judge committed prejudicial error in refusing to dismiss her for cause, said: "One doubts that a person who harbors strong feelings ... could be a fair and impartial juror."[14]

Finally, in *State v. Bailey,*[15] the trial judge asked prospective jurors if they would be inclined to give greater weight to the testimony of a peace officer than to testimony of a non-officer. One prospective juror, Bushnell, responded that he "probably would" and concurred in the response of another prospective juror that officers were generally very reliable. Another prospective juror, Brown, said with reference to peace officers, "[Y]ou can rely upon their testimony and their background

11. *Parrish, supra* n. 8, at 536.

12. *Supra* n. 8.

13. Utah, 542 P.2d 1091 (1975).

14. *Id.* at 1092.

15. *Supra* n. 7.

to the utmost.... I would want to stand behind them a hundred percent." [16] The trial judge did not question either juror as to whether he felt he could remain impartial. This Court said there was a clear inference of bias that was not rebutted. Therefore, the trial court had committed prejudicial error in refusing to dismiss Brown and Bushnell for cause.

In this case, Butler's examination by both the trial judge and defense counsel clearly discloses that Butler had strong and deep impressions with regard to the veracity of police officers' testimony and would credit a police officer's testimony to an undue extent. He should have been dismissed for cause. Therefore, forcing defendants to use one of their peremptory challenges to remove Butler resulted in prejudicial error.

Accordingly, the defendants convictions are vacated and set aside and the case remanded for a new trial. Since we reverse on the issue of qualification of jurors, we do not address the issue of jury instructions.

STEWART, HOWE, DURHAM and ZIMMERMAN, JJ., concur.

---

**16.** *Bailey, supra* n. 7, at 768.