STATE of Utah, Plaintiff and Respondent,

v.

Louis E. WILSON, Defendant and Appellant.

No. 880103–CA.

Court of Appeals of Utah.

March 29, 1989.

Martin V. Gravis, Ogden, for defendant and appellant.

R. Paul Van Dam and Barbara Bearnson, Salt Lake City, for plaintiff and respondent.

Before BILLINGS, GARFF and GREENWOOD, JJ.

## OPINION

BILLINGS, Judge:

Defendant Louis Wilson appeals from a jury verdict finding him guilty of sexual abuse of a child, a second degree felony, in violation of Utah Code Ann. § 76-5-404.1 (1988). Defendant claims the trial court erred in 1) permitting defendant's wife to testify against defendant over his objection, 2) failing to dismiss a juror for cause, and 3) allowing the State to amend the information during trial to conform to the evidence. We affirm.

## FACTS

Defendant's conviction arose out of events occurring on or about December 27, 1986. The victim, defendant's seven-year-old stepdaughter, was left home with defendant. While the victim was watching television, defendant approached her, removed her clothes, and engaged in oral sex with her. Defendant removed his pants and attempted, unsuccessfully, sexual intercourse. Defendant then carried the victim into his bedroom and continued to sexually molest the child. The victim's mother and defendant's wife, Ms. Wilson, returned home and found defendant and the victim in the bedroom. Ms. Wilson immediately took the child out of the room, and asked her what had happened. The victim replied that defendant was "touching" her. Ms. Wilson returned to the bedroom to speak with defendant and observed his pants were unzipped. Approximately one week later, on January 3, 1987, the victim's grandmother reported the incident to the police. The original information charged defendant with sexual abuse of a child occurring on or about December 27, 1986.

Prior to trial, defendant filed a motion under Utah Code Ann. § 78-24-8(1) (1987), to prevent Ms. Wilson from testifying against him. The trial court denied defendant's motion and Ms. Wilson testified at trial.

During jury selection, defendant challenged for cause a prospective juror claiming her responses in voir dire demonstrated an inability to be fair and impartial. The juror had expressed confusion concerning the applicable burden of proof in a criminal case, and also expressed reservations about whether she could remain open minded given the subject matter of the case. The trial court and defense counsel both questioned the juror further, and ultimately, the juror stated she understood the defendant did not have the burden to prove he was innocent, and she would try to render a fair and impartial decision. Thereafter, the trial court denied defendant's motion to excuse the juror for cause.

Sometime prior to the date set for trial, Detective Hillman, the investigating officer, became concerned about the December 27 date alleged in the information because of a conversation she had with Ms. Donna Warby. Ms. Warby informed Detective Hillman the victim had spent December 27th with her in Salt Lake City. As a result, an amended information, dated November 18, 1987, was filed charging defendant with the same crime committed on or about December 20, 1986, and/or on or about December 27, 1986.

On November 19, 1987, the date originally set for trial, the case was remanded to the circuit court for another preliminary hearing as a result of the amended charge. Following a second preliminary hearing, the case was again set for trial. Defendant did not at any time throughout the proceedings file a bill of particulars as to the precise date of the alleged crime.

On the first day of trial, at defendant's request, the State agreed to strike the December 27 date from the information. The same day, the victim testified the incident occurred December 20, 1986, the Saturday before Christmas. However, Ms. Wilson later testified the incident could not have occurred December 20th and that it must have occurred a week later on Saturday, December 27, 1986. Following Ms. Wilson's testimony, the State moved to amend the information to reinstate the December 27 date. Defendant objected to the State's motion but did not request a continuance. The trial court granted the State's motion. Thereafter, Ms. Warby testified she recalled returning the victim to Ogden on December 27, 1986, not December 28th, the date she had previously told Detective Hillman. Defendant was subsequently convicted by a jury of sexual abuse of a child.

Defendant raises three issues on appeal: 1) the trial court erred in permitting Ms. Wilson to testify against him over his objection, 2) the court erred in refusing to grant defendant's challenge for cause against the prospective juror, and 3) the trial court erred in allowing the State to amend the information the day of the trial. We address each issue.

## TESTIMONIAL PRIVILEGE

It is undisputed that prior to trial, defendant asserted his spousal testimonial privilege in an effort to prevent Ms. Wilson from testifying. The trial court denied his motion. We agree the trial court erred in permitting Ms. Wilson to testify, but find the error harmless.[1]

Utah R.Evid. 501 provides testimonial privileges are controlled by common law except as they are modified by statute or court rule. The Utah Legislature has codified the "spousal testimonial privilege" in Utah Code Ann. § 78-24-8(1) (1987), which provides in relevant part, with our emphasis:

A husband cannot be examined for or against his wife without her consent, nor a wife for or against her husband without his consent; nor can either during the marriage or afterwards be, without the consent of the other, examined as to any communication made by one to the other during the marriage; but this exception does not apply to a civil action or proceeding by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other, nor for the crime of deserting or neglecting to support a spouse or child, *nor where it is otherwise specially provided by law.*[2]

---

1. Errors we deem "harmless" are those errors properly challenged below and preserved for appeal that "are sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the outcome of the proceedings." *State v. Verde,* 770 P.2d 116, 120 (Utah 1989).

2. The State claims § 78-24-8(1) giving the testimonial privilege to a *defendant-spouse* is in direct conflict with, and thereby superseded, by

article 1, section 12 of the Utah Constitution which gives the *witness-spouse* the absolute privilege not to be "compelled" to testify against his or her spouse. *See also* Utah Code Ann. § 77-1-6(2)(d) (1982) (codifying the constitutional privilege). The State argues the right not to be "compelled" to testify inferentially gives the testifying spouse the right not to be foreclosed from testifying. We are not persuaded by the State's argument. First, the State's reliance on *Trammel v. United States,* 445 U.S. 40, 100

The Utah Supreme Court has held that § 78–24–8(1) embodies two marital privileges. "First, an accused spouse is granted the privilege to prevent his or her spouse from testifying. The second privilege ... prevents a spouse from being examined as to any communications made by one to the other during the marriage." *State v. Benson,* 712 P.2d 256, 258 (Utah 1985).

The testimonial privilege set forth in § 78–24–8(1) was, at one time, modified by the old rules of evidence adopted in 1971. *See, e.g., State v. Bundy,* 684 P.2d 58, 61 (Utah 1984). Prior to the adoption of the Utah rules of evidence in 1983, the predecessor rules limited, and in some cases, eliminated the application of § 78–24–8(1). *See, e.g., State v. Smith,* 726 P.2d 1232, 1236 (Utah 1986); *Benson,* 712 P.2d at 258; *Bundy,* 684 P.2d at 61. Specifically, Rule 23(2) of the old Utah rules of evidence limited a defendant-spouse's right to prevent his or her spouse from testifying under § 78–24–8(1) to *confidential communications. See, e.g., Benson,* 712 P.2d at 258. Additionally, Rule 23(2) rendered the privilege relating to confidential communications altogether inapplicable in cases where the defendant-spouse was charged "with a crime against the child of either spouse." *Id.*

However, the 1971 rules of evidence have since been repealed and superseded by new rules of evidence, effective September 1, 1983. *See Smith,* 726 P.2d at 1236 n. 4. Under the 1983 version, there are no rules of evidence comparable to Rule 23(2) limiting or modifying a defendant-spouse's right to prevent his or her spouse from testifying in a criminal matter. Nor are there statutory provisions modifying a defendant-spouse's testimonial privilege other than the exceptions expressly set forth in § 78–24–8(1), none of which apply in this case.[3]

Accordingly, we hold defendant had a statutory right to prevent Ms. Wilson from testifying pursuant to § 78–24–8(1), and the trial court's failure to excuse Ms. Wilson was error. However, "[e]rror is to be disregarded if it does not affect the substantial rights of the defendant." *State v. Benson,* 712 P.2d 256, 259 (Utah 1985). *Accord State v. Knight,* 734 P.2d 913, 919 (Utah 1987). *See also* Utah R.Crim.P. 30(a) (codified at Utah Code Ann. § 77–35–30 (1982)); Utah R.Evid. 103; Utah R.Civ.P. 61.

To establish the trial court committed reversible error in this case, defendant must demonstrate "that there is a reasonable likelihood that absent his wife's testimony the jury would have returned a [more favorable] verdict." *State v. Bundy,* 684 P.2d 58, 61 (Utah 1984). The Utah Supreme Court has stated, "[f]or an error to require reversal, the likelihood of a different outcome must be sufficiently high to undermine confidence in the verdict." *Knight,* 734 P.2d at 920.

Defendant claims allowing Ms. Wilson to testify was prejudicial because her testimony revealed the incident occurred December 27, 1986, not December 20th. Defen-

S.Ct. 906, 63 L.Ed.2d 186 (1980) is misguided. *Trammel* involved the modification of federal common law and not state statutory provisions such as § 78–24–8(1). Second, no Utah authority to date has interpreted article 1, section 12 as the State suggests, and we decline to do so today. *Cf. State v. Brown,* 14 Utah 2d 324, 383 P.2d 930, 932, n. 2 (1963).

**3.** It is unclear whether the failure to include a rule similar to Rule 23(2) in the 1983 version was intentional, or whether the absence of a comparable statutory provision is simply a legislative oversight. *See generally* Boyce & Kimball, *Utah Rules of Evidence 1983,* 1985 Utah L.Rev. 63, 96–99. Nonetheless, Utah's spousal testimonial privilege giving a defendant-spouse the absolute right to prevent his or her spouse

from testifying, especially in cases like the instant one, is outdated. *See Trammel v. United States,* 445 U.S. 40, 44–54, 100 S.Ct. 906, 909–914, 63 L.Ed.2d 186 (1980). In *Trammel,* the United States Supreme Court stated "[n]o other testimonial privilege sweeps so broadly." *Id.* at 51, 100 S.Ct. at 912. The Court further wrote:

"As Jeremy Bentham observed more than a century and a half ago, such a privilege goes far beyond making 'every man's house his castle,' and permits a person to convert his house into 'a den of thieves.'

The ancient foundations for so sweeping a privilege have long since disappeared." *Id.* at 51–52, 100 S.Ct. at 913.

dant's argument is not persuasive. It is clear and defendant concedes, as he must, time is not a statutory element of sexual abuse of a child. *See, e.g., State v. Robbins,* 709 P.2d 771, 772 (Utah 1985). Although all witnesses involved in this case were confused, at one time or another, as to the date the incident happened, Ms. Wilson's testimony concerning the date was not crucial to the State's case. Exactly when the offense occurred was of little importance. Furthermore, after reviewing Ms. Wilson's testimony, we are not persuaded that it was even helpful to the State's case.

Defendant was convicted of violating Utah Code Ann. § 76–5–404.1 (1988) which provides, with our emphasis:

A person commits sexual abuse of a child, if, under circumstances not amounting to rape of a child, object rape of a child, or sodomy upon a child or an attempt to commit any of these offenses, *the actor touches the anus, buttocks, or genitalia of a child who is under the age of 14, or touches the breast of a female child who is under the age of 14, or otherwise takes indecent liberties with a child* ... with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person regardless of the sex of any participant.

Upon an extensive review of the record, we find the victim's testimony supported by the testimony of two investigating officers and the victim's grandmother, was abundantly sufficient to support the jury's guilty verdict. The child's testimony provided in relevant part as follows:

Q. (by the prosecutor) I want you to remember if you can the Saturday before Christmas. Can you remember that date?

A. Yes.

Q. Why can you remember that date?

A. I don't know.

Q. Did something happen on that particular day?

A. Yes.

Q. What happened on that day?

A. I got touched.

Q. Who touched you?

A. Louis.

Q. What room in your house did Louis touch you?

A. Front room.

Q. Where was your mother?

A. She went to the liquor store.

Q. Did she go to the liquor store with somebody?

A. Uh-huh.

Q. Do you know who she went with?

A. I think Steve Reynolds.

Q. Where were your brothers?

A. They're [sic] outside. Two of my brothers, the oldest ones were across the street playing basketball, and my other brother, I don't know where he was.

Q. And what about your sister, Shy, where was your sister Shy?

A. In the room.

Q. So was there anybody else in the living room besides you and Louis?

A. No.

Q. After your mother went to the liquor store, what did Louis do?

A. He came in the front room.

Q. What did he do?

A. He touched me.

Q. Where did he touch you?

A. On my private.

Q. Did you have your clothes on or off when he touched you?

A. Off.

Q. How did your clothes get off?

A. He took them off.

Q. Do you remember if you were wearing panties?

A. Yes, I was.

Q. Or underwear? Did Mr. Wilson take those off as well?

A. Yes.

Q. You said he touched you. What did he touch you with?

A. His private.

Q. Was [sic] his clothes off then?

A. Yes.

Q. How did his clothes come off?

A. He took them off.

Q. Do you have a special word for his privates or for a man's privates?

A. Yes.

Q. What do you call a man's private?

A. A weenus.

Q. He touched you with his weenus?

A. Yes.

Q. On your private parts?

A. Yes.

Q. Did he touch you with anything else?

A. His mouth on my private.

Q. How long did he touch you with his mouth? How long did he keep his mouth on your privates?

A. For about a couple of minutes.

Q. Then [sic] what about his private parts, how long did he have his private parts on your private parts?

A. For about five or something like that.

Q. Did you see his private parts?

A. No.

Q. Do you know if Louis was able to put his private part inside of you?

A. No.

Q. Did he try?

A. Yes.

Q. Did it hurt?

A. No.

Q. How long did he touch you?

A. For about five or ten minutes.

Q. Then what happened after that?

A. Then he picked me up and I pulled up my pants.

Q. What did he do after he picked you up?

A. He took me into my mom's bedroom.

Q. What happened while you were in your mother's bedroom?

A. He laid on top of me.

Q. Were you on the bed?

A. Yes.

Q. How were you laying on the bed?

A. On my stomach.

Q. How was he laying? Where was he? You said he laid on top of you, he laid on your back then or on your stomach?

A. On my back.

Q. How long did he lay on top of you?

A. Until my mom came.

Q. Did he touch your privates at all while you were in the bedroom?

A. No.

Q. How do you know when your mother came home?

A. Oh, she said, I'm home.

Q. What happened when she said, I'm home?

A. He jumped off me.

Q. Could you see your mother?

A. Yes.

Q. Could she see you?

A. Yes.

Q. What did you do after your mother got home?

A. She took me into the bathroom and I told her that Louis was messing with me.

Cross–Examination

Q. (by defense counsel) Has anybody ever touched you there before?

A. No.

Q. Nobody has ever done that sort of thing?

A. No.

Q. Have you ever heard of it? Have you ever seen that kind of thing on T.V.?

A. No.

Q. What about at school, have any of your other friends talked about things like this?

A. No.

Eula May Fletcher, the victim's grandmother, also testified at trial[4] stating "[w]ell, that day she told me that he tried to pull her panties down—well, he had his hand up under her clothes." Ms. Fletcher further testified "I asked her, did he get to her, and she said no because her mama [sic] came in at the right time ... she said he tried to—he touched her down in her

---

4. Defense counsel objected to Ms. Fletcher's testimony on the grounds of hearsay. The court overruled counsel's objection, and received Ms. Fletcher's testimony as to the victim's credibility.

private ... with his hand." The victim's testimony was also corroborated by police reports taken within a week or two of the incident.

We conclude the victim's testimony was clear, consistent, and withstood probing cross-examination. Furthermore, it was corroborated by her grandmother and by police reports taken shortly after the incident. Accordingly, although we find the trial court improperly allowed Ms. Wilson to testify, we find her testimony was either cumulative or not central to defendant's conviction, and there was sufficient other credible testimony that our confidence in the verdict is not undermined by the trial court's error.

## DISMISSAL OF JUROR FOR CAUSE

■ Defendant's second claim of error is the trial court's refusal to excuse a prospective juror for cause. Although the juror expressed confusion about the appropriate burden of proof and initial reservations concerning the subject matter of the case, we hold the trial court did not abuse its discretion in denying defendant's challenge for cause.

Utah courts have uniformly held it is reversible error to force counsel to exercise a peremptory challenge to remove a prospective juror who should have been dismissed for cause after he or she expressed bias or an inability to be impartial. *See, e.g., State v. Moton*, 749 P.2d 639, 642 (Utah 1988); *State v. Jones*, 734 P.2d 473, 474 (Utah 1987) (and citations therein). Utah R.Crim.P. 18(e)(13) provides that a juror may be challenged if the juror has "formed or expressed an unqualified opinion or belief as to whether the defendant is guilty or not guilty of the offense charged...." Rule 18(e)(14) provides that a juror may be excused if "a state of mind exists on the part of the juror with reference to the cause, or to either party, which will prevent him from acting impartially and without prejudice to the substantial rights of the party challenging...." The Utah Supreme Court has stated that "[o]nly 'strong and deep impressions' on the part of a venireman ... serve as a

basis for disqualification." *Moton*, 749 P.2d at 642. *Accord State v. Hewitt*, 689 P.2d 22, 26 (Utah 1984); *State v. Bailey*, 605 P.2d 765, 767 (Utah 1980).

In reviewing a claim that the trial court committed error in refusing to dismiss a juror for cause,

> [d]ue consideration should be given to the trial judge's somewhat advantaged position in determining which persons would be fair and impartial jurors, and his determination should not be disturbed unless he abuses his discretion. Nevertheless, we also view the exercise of discretion in light of the fact that it is a simple matter to obviate any problem of bias simply by excusing the prospective juror and selecting another.

*Jenkins v. Parrish*, 627 P.2d 533, 536 (Utah 1981) (citations omitted).

In this case, the prospective juror was initially confused regarding the burden of proof in a criminal case. The juror stated she thought the defendant needed to prove himself innocent. Following the trial court's explanation of the presumption of innocence and consequent burden on the State, the juror clearly stated she understood the defendant need not prove himself innocent but that the burden of proof rested with the State.

The juror also expressed some concern about the subject matter of the case being tried. Specifically, the juror stated:

> "I don't know about whether I could be really—I mean as a mother, I would have, you know, if anything like that happened to my children, I would have an extremely difficult time probably being very open minded, so I think it would be tough."

When asked by defense counsel, "[i]f the court instructs you that as to the burden of proof and presumption of innocence ... do you think that you could render a fair and impartial verdict," the juror replied, "I would certainly try."

We are mindful that once a juror makes comments "which facially raise a question of partiality or prejudice," *State v. Bishop*, 753 P.2d 439, 451 (Utah 1988), a trial court

abuses its discretion in not removing the challenged juror for cause,

> unless the court or counsel investigates further and finds the inference rebutted; rebuttal of such an inference may be accomplished by a showing that the statement was merely the product of a 'light impression' and not one that would 'close the mind against the testimony that may be offered in opposition.'

*Id.* (quoting *State v. Bailey*, 605 P.2d 765, 768 (Utah 1980)).

Defendant relies on *State v. Hewitt*, 689 P.2d 22 (Utah 1984), to support his claim that the juror demonstrated "strong and deep impressions" of bias. We find *Hewitt* distinguishable. In *Hewitt*, the Utah Supreme Court held the trial court abused its discretion in refusing to excuse a prospective juror for cause. When asked if there was any reason why he could not try the case impartially, the juror in *Hewitt* replied that if the evidence were close he would give the benefit of the doubt to the police officer's testimony. *Id.* at 26. The juror also stated, " '[i]n essence, I would prefer not to be here.' " *Id.* Following these statements, the trial court made no attempt to rehabilitate the prospective juror. *Id.*

Unlike *Hewitt*, the trial judge in this case did address on several occasions the concerns expressed by the juror. The trial judge cleared up any misconceptions the juror maintained about the appropriate burden of proof. Furthermore, the juror's statement that if it were her child she would have a problem being open minded, was a generalized concern any parent would have, and did not suggest that the juror had an impression "so strong and deep as to constitute bias." *See Hewitt*, 689 P.2d at 26.[5] Accordingly, we hold the trial court did not abuse its discretion in denying defendant's request to excuse the prospective juror for cause.

## AMENDING THE INFORMATION

■ Finally, defendant claims the trial court erred in granting the State's motion to amend the information during its case in chief to conform to the evidence. Defendant claims the amendment was prejudicial to his defense. We find defendant's claim without merit, and affirm the trial court's determination.

As of the morning of trial, counsel for defendant concedes he was ready to defend both the dates of December 27th and December 20th. At defendant's request, the State agreed to drop the December 27th date from the information, and trial proceeded on an information alleging defendant committed the crime on or about December 20th. Following the testimony of Ms. Wilson, the State moved to reinstate the December 27th date. Counsel for defendant did not request a continuance.

Utah Code Ann. § 77–35–4(d) (1982), provides that a trial court "may permit an . . . information to be amended at any time before verdict if no additional or different

---

5. Other cases where the Utah Supreme Court has found that prospective jurors indicated a "strong and deep impression" of bias sufficient enough that the failure to dismiss those jurors for cause was prejudicial error are factually distinguishable. *See, e.g., State v. Jones*, 734 P.2d 473 (Utah 1987); *State v. Brooks*, 631 P.2d 878 (Utah 1981); *Jenkins v. Parrish*, 627 P.2d 533 (Utah 1981); *State v. Bailey*, 605 P.2d 765 (Utah 1980); and *Crawford v. Manning*, 542 P.2d 1091 (Utah 1975).

In *State v. Jones*, both jurors challenged were acquainted with relatives of the victims, and expressed doubt that they could remain impartial given their associations. *Jones*, 734 P.2d at 474. In *State v. Brooks*, two prospective jurors made statements indicating they could not be impartial. Both jurors in *Brooks* "expressed strong feelings of anger and frustration arising out of their *personal experiences* as victims of

crimes similar to [the case before them]." *Brooks*, 631 P.2d at 884 (emphasis added). In *Jenkins v. Parrish*, a prospective juror indicated that due to her background, she would give greater weight to the testimony of the defendant doctor simply by virtue of his status as a doctor. *Jenkins*, 627 P.2d at 536. Similarly, in *State v. Bailey*, a juror stated he would accord more weight to the testimony of a peace officer than to testimony of a non-peace officer. *Bailey*, 605 P.2d at 768. Finally, in *Crawford v. Manning*, a prospective juror stated that she harbored "strong feelings concerning anyone who would sue to recover money for the death of another." *Crawford*, 542 P.2d at 1092. Unlike the cases set forth above, illustrating the type of strong and deep impressions that have been held to constitute reversible bias, statements made by the challenged juror in this case simply do not rise to the appropriate level.

offense is charged and the substantial rights of the defendant are not prejudiced." Furthermore, the prosecution need not allege or prove the time of the offense charged unless time is an express statutory element. *See, e.g., State v. Fulton,* 742 P.2d 1208, 1213 (Utah 1987), *cert. denied,* — U.S. ——, 108 S.Ct. 777, 98 L.Ed.2d 864 (1988). *See also* Utah Code Ann. § 77–35–4(b) (1982) (time need not be alleged in an information unless necessary to charge the offense).

Time is not a statutory element of sexual abuse of a child. *State v. Robbins,* 709 P.2d 771, 772 (Utah 1985). Moreover, as in *Fulton,* defendant "has not asserted a statute of limitations, age, or other analogous defense." 742 P.2d at 1213. Defendant did raise an alibi defense, but "the mere assertion of an alibi defense does not impose on the prosecution the additional burden of proving the precise date of the act." *Id.*

Defendant claims that allowing the State to amend the information during trial constituted undue surprise and interfered with his ability to present his defense, thereby depriving him of his right to due process. The Utah Supreme Court has stated, with respect to a similar due process challenge, "a criminal defendant must be sufficiently apprised of the particulars of the charge to be able to 'adequately prepare his defense.'" *Fulton,* 742 P.2d at 1214 (quoting *State v. Burnett,* 712 P.2d 260, 262 (Utah 1985)).

On the morning of trial, it is clear defendant was prepared to defend both dates, December 20th and December 27th. More importantly, defendant did not request a continuance in order to remedy the alleged prejudice and, therefore, waived his right to complain on appeal. "[W]henever the prosecution changes its position, a defendant may seek a continuance ... [but] the failure of a defendant to seek a continuance negates any claim of surprise and amounts to a waiver of any claim of variance." *Id.* at 1215–16. Defendant's failure to request a continuance is fatal to his claim, and accordingly, we affirm the trial court's decision.

CONCLUSION

Although the trial court improperly allowed Ms. Wilson to testify, we find the error harmless because Ms. Wilson's testimony was either cumulative or not critical. Thus, defendant failed to establish that without her testimony there was a reasonable likelihood of a more favorable outcome. Further, the trial court did not abuse its discretion in refusing to excuse the juror challenged for cause or in allowing the State to amend the information during trial. Accordingly, defendant's conviction is affirmed.

GARFF and GREENWOOD, JJ., concur.