STATE of Utah, Plaintiff and Respondent,

v.

David FULTON, Defendant and Appellant.

No. 20191.

Supreme Court of Utah.

May 28, 1987.

Rehearing Denied Sept. 28, 1987.

John D. Russell, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Sandra L. Sjogren, Salt Lake City, for plaintiff and respondent.

ZIMMERMAN, Justice:

Defendant David Wayne Fulton appeals from a jury conviction of sodomy on a child. Utah Code Ann. § 76-5-403.1 (1986). His claims are as follows: (i) his confession was involuntary and should have been suppressed; (ii) the results of a favorable polygraph examination should have been admitted; (iii) because the State did not establish the date of the incident of abuse with specificity, it did not carry its burden of proof with respect to all elements of the offense; (iv) the admission of the child victim's out-of-court statement denied defendant his constitutional right to confrontation; and (v) the minimum mandatory sentencing provisions of Utah's sexual abuse statute violate his constitutional right to be free from cruel and unusual punishment. We affirm.

On September 1, 1983, a caseworker at the State Division of Family Services received an anonymous phone call alleging that Fulton had sexually abused a seven-year-old child. The following day, the caseworker and a Brigham City police officer interviewed the child, who confirmed that Fulton had touched his genitals.

On September 7, 1983, the police officer contacted Fulton by telephone, and Fulton agreed to go to the police station. Upon his arrival, Fulton was read his *Miranda* rights, stated that he understood them, and signed a form waiving those rights. In an unrecorded conversation that lasted less than one hour, Fulton was informed of the child's statements and, *according to the officer's trial testimony*, admitted that the allegations were true. Fulton then allowed the officer to record a conversation during which he admitted to having touched the child's genitals several times. The entire interrogation lasted about two hours. Fulton was arrested and charged with three counts of forcible sexual abuse.

The child was also interviewed on September 7, 1983. At that time, he described the molestations in more explicit detail and informed the police officer that Fulton had engaged him in oral sex and had threatened to lock him in a closet if he refused to do as he was told. Fulton was interviewed again the next day at the jail. Again, he waived his *Miranda* rights and during this interrogation both admitted and denied having engaged in any acts of oral sex with the child. As a result of this interview, Fulton was charged with two additional counts of sodomy on a child.

The trial on this matter was set for July 9, 1984. In January of 1984, Fulton took a polygraph test administered by Dr. David Raskin, an independent expert. The results of the test indicated that Fulton was telling the truth when he denied engaging in any sexual activities with the child. Because the prosecutor refused to stipulate to the admission of these polygraph results, Fulton's counsel moved for their admission on July 3, 1984. The trial court refused to admit the results [1] on the basis that Fulton had waived his right to introduce the evidence by failing to file the motion five working days before trial as required by Rule 12 of the Utah Rules of Criminal Procedure. Utah Code Ann. § 77-35-12(b)(2) (1982).

At trial, the child, then eight years old, testified to the sexual acts performed by Fulton, but failed to state with any specificity when the acts had occurred. The child's mother testified that beginning in February of 1983, Fulton had often tended the child for her. She also testified that the child had spoken of the incidents as having occurred both "when it was cold, snowy" and when Fulton was a guest for breakfast. She stated, and Fulton confirmed,

---

1. The trial court did allow Dr. Raskin to testify that the methods used to interview the child were flawed and led to questionable results and that only someone with a Ph.D. in this area could properly interview a sexually abused child.

that he had eaten breakfast with the child and his mother in early June of 1983.

Fulton denied all of the allegations of sexual abuse. He claimed that he did not understand that he was waiving his rights at the time of his interrogations and that he was coerced and pressured and finally found it easier to agree with the officer's allegations of sexual abuse rather than resist further. Fulton also introduced testimony by third parties tending to prove that the child had a reputation for lying and that the child's memory of simple events or facts from the past, like the names of his school teachers, was so inadequate as to cast doubt on his memory and truthfulness.

The jury convicted Fulton of one count of sodomy and acquitted him of all other charges. His first claim on appeal is that the trial court erred in admitting his confessions because the State failed to meet its burden of showing that he knowingly and voluntarily waived his federal constitutional rights to remain silent and to counsel.[2] He contends that when he was interrogated, both on September 7th, prior to his arrest, and on September 8th, after he had been in jail for approximately twenty hours, the officer asked him the same questions over and over in a harassing fashion and, when he did not agree with the accusations, accused him of lying. All this, he claims, coerced him into admitting that he had sexually abused the child. Fulton also claims that during the interview on the 8th, he did not understand the nature of the

charges against him because he was depressed and had been held incommunicado.[3]

The right to remain silent and the right to counsel during a custodial interrogation may be waived, but these waivers must be both intentional and made with full knowledge of the consequences, and the defendant is given the benefit of every reasonable presumption against such a waiver. *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977). In determining the validity of a waiver, a court is to consider all the circumstances surrounding the interrogation, as well as the suspect's ability to clearly understand the import of his actions. *See North Carolina v. Butler*, 441 U.S. 369, 372–76, 99 S.Ct. 1755, 1756–59, 60 L.Ed.2d 286 (1979).

■ Having considered the totality of the circumstances, we conclude that Fulton's constitutional rights were not violated; he was fully advised of his *Miranda* rights and chose to speak freely to the officer. A review of the transcripts of Fulton's conversations with the officer[4] leaves one with the firm impression that there is no merit to Fulton's claim that this interrogation coerced him into waiving his rights and confessing. While the officer repeatedly pressed him to confess, there is no evidence that Fulton was abused or threatened at any time. Fulton testified that he considered himself to be of average intelligence and that he understood the subject of the interrogation. His first con-

---

2. As is commonly the case, defendant's anticipated arguments are all based on federal constitutional provisions and case law. No attempt has been made to brief state constitutional questions, despite our previous invitations to do so. Therefore, we decide only the federal constitutional questions and decline to consider whether any state rights are implicated. *See State v. Earl*, 716 P.2d 803, 805–06 (Utah 1986); *State v. Hygh*, 711 P.2d 264, 271–73 (Utah 1985) (Zimmerman, J., concurring).

3. We note that a suspect is not entitled to the benefit of *Miranda*'s procedural protections until the suspect is interrogated in a custodial setting; custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436,

444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). Interrogation may involve either "express questioning or its functional equivalent [i.e.] ... words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980) (footnotes omitted). In this case, it is clear that Fulton was subjected to a custodial interrogation each time he was questioned.

4. Fulton testified at trial that he thought the unrecorded fifty-five minutes of the first conversation were not substantially different than the recorded portion. From our conclusion that the recorded conversation does not reflect any coercion, it follows that the claim of coercion with respect to the unrecorded portion of the discussion has no merit.

fession occurred less than an hour after questioning began on the first day. Nor is there any merit to Fulton's claim that his confession on the second day was coerced because he was held incommunicado between the two interrogation sessions. The jail records indicate that he received at least one telephone call after the first session and the resulting arrest. Under these circumstances, we conclude that the trial court properly found Fulton's confessions admissible.

Fulton's second claim on appeal is that he should have been allowed to introduce the favorable polygraph test results despite the prosecutor's refusal to stipulate to their admission. The admissibility of polygraph test results in the absence of the consent of both parties is not a firmly settled question in Utah. In *State v. Abel*, 600 P.2d 994, 998–99 (Utah 1979), we held that in the absence of a stipulation, it was error to admit polygraph test results, particularly where there was insufficient foundation for assessing the reliability and probative value of a polygraph examination. The Court noted, however, that its decision was not intended to foreclose future reconsideration of the reliability and admissibility of such test results.

■ While *Abel* may have left the issue open, the present case is not an appropriate one in which to reconsider the polygraph question. Here, Fulton failed to follow the proper procedures in seeking to have the test results admitted into evidence. Rule 12(b) of the Utah Rules of Criminal Procedure provides:

Any defense, objection or request, including request for rulings on the admissibility of evidence, which is capable of determination without the trial of the general issue may be raised prior to trial by written motion. The following shall be raised at least five days prior to the trial:

. . . .

(2) Motions concerning the admissibility of evidence.

Utah Code Ann. § 77–35–12(b)(2) (1982). The record establishes that Fulton's re-

quest for a hearing on the admissibility of the test results was filed on Tuesday, July 3, 1984, only three working days before his trial was scheduled to begin on Monday, July 9, 1984.[5] The failure to give timely notice constituted a waiver of Fulton's right to seek admission of the results of the polygraph test. Utah R.Crim.P. 12(d) (codified in Utah Code Ann. § 77–35–12(d) (1982)). The trial court had the discretion to relieve defendant of the failure to satisfy this rule. *See id.* However, it declined to do so. No reasonable excuse for the late notice appears in the record, nor does Fulton's counsel advance one. The polygraph had been administered six months prior to trial, and its results were known to defendant and his counsel. In the absence of such an excuse, we cannot say that the trial court abused its discretion in not waiving the notice requirements of Rule 12(b)(2). *Cf. State v. Ortiz*, 712 P.2d 218, 219–20 (Utah 1985) (valid excuse justified noncompliance with notice statute).

Fulton's third claim concerns the allegation in the information that the offense occurred "on or about June 1, 1983." From the arguments and cases in Fulton's brief, we can discern three basic contentions with respect to this allegation: (i) the conviction should be reversed because there was insufficient evidence to prove an offense occurring "on or about June 1, 1983"; (ii) Fulton's ability to prepare a defense was unconstitutionally impaired because the allegation that the offense occurred "on or about June 1, 1983" was insufficiently precise; and (iii) Fulton's defense was prejudiced by an unconstitutional variance between the date alleged in the information and the evidence presented by the prosecution at trial.

With respect to his first argument—that the prosecution failed to carry its burden of proof as to the time of the offense—Fulton relies on our opinion in *McNair v. Hayward*, 666 P.2d 321 (Utah 1983). In *McNair*, we stated that "time is always an essential element of a crime," *id.* at 326, but this phrase must be read in context.

5. Weekends and holidays are excluded in calculating time periods set out in the rules whenever the prescribed period is less than seven days. Utah Code Ann. § 77–35–2(a) (1982).

*McNair* limited this phrase by stating that time is an element only "in the sense that due process requires that an accused be given sufficiently precise notification of the date of the alleged crime [so] that he can prepare his defense." *Id. McNair* did not impose a burden on the prosecution to prove time of the offense beyond a reasonable doubt in all criminal proceedings.

Our cases make it clear that the time an offense was committed is generally not an element which the prosecution must prove at trial. *See, e.g., State v. Wilson,* 642 P.2d 394, 395–96 (Utah 1982); *State v. Distefano,* 70 Utah 586, 595, 262 P. 113, 116 (1927); *State v. Bayes,* 47 Utah 474, 476–77, 155 P. 335, 335–36 (1916). *McNair* did not change this case law.

Certainly, there are instances in which time must be proven. The obvious example is when time is an express statutory element. But the prosecution also may have the burden of proving the date of an offense in other circumstances. For example, when the defendant argues that the statute of limitations has run on the alleged crime, the prosecution must prove that the crime occurred within the period of limitations. *Cf. State v. Bundy,* 684 P.2d 58, 62 (Utah 1984); *McNair v. Hayward,* 666 P.2d at 326. In addition, when a defendant asserts that the age of either the victim or the defendant prevents the act from being criminal or reduces the potential punishment, the prosecution has the burden to prove beyond a reasonable doubt that the crime was committed at a time when the victim or the defendant was of the requisite age. *Compare* Utah Code Ann. § 76–5–401 (1978) (unlawful sexual intercourse—female must be under the age of 16; age of defendant may reduce penalty), *with* Utah Code Ann. § 76–7–104 (1978) (fornication—age of participants irrelevant). Because a defense based on the time of the crime, such as a statute of limitations or the age of the victim or the defendant, is valid even when the prosecution can prove all statutory elements of the crime, the prosecution is required to prove time as an additional aspect or element of its case.

■ In the present case, time is not a statutory element of the offense charged, *see* Utah Code Ann. § 76–5–403.1 (1986), and Fulton has not asserted a statute of limitations, age, or other analogous defense. Although Fulton raised an alibi defense, such a defense is not one that has merit independent of whether the State can prove the statutory elements of the crime; rather, an alibi defense challenges the State's ability to prove the statutory elements. Therefore, the mere assertion of an alibi defense does not impose on the prosecution the additional burden of proving the precise date of the act.[6] The burden on the prosecution remains the same, i.e., to establish all elements of the crime beyond a reasonable doubt. It follows that Fulton's argument that the alleged time of the offense was not supported by substantial evidence at trial is without merit: when the prosecution does not have to prove the precise time of the offense, insufficiency of the evidence on that point is not a ground upon which the verdict can be attacked.

We now turn to Fulton's second argument concerning the allegation of time in the information—that his constitutional right to adequate notice of the time of the alleged crime has been denied. A constitutional requirement of adequate notice could have several sources. One is mentioned in the *McNair* decision: the due process clause of the Utah Constitution, article I, section 7. *McNair v. Hayward,* 666 P.2d at 326 ("[D]ue process requires that an accused be given sufficiently precise notifi-

---

**6.** It may be argued that this is an unwise rule because when an alibi defense is asserted, the prosecution may attempt to avoid the defense by declining to present to the jury evidence concerning the time of the offense. However, such a choice does not necessarily work to the prosecution's advantage. First, the prosecution's information concerning time of the offense, if available, cannot appropriately be concealed. *See State v. Robbins,* 709 P.2d 771, 773 (Utah 1985). But more importantly, the fact that the prosecution fails to establish the time and date of the offense will almost always reduce the credibility of the prosecution's case. In addition, if on cross-examination the defense can elicit specific testimony as to the time of the alleged offense, it can still present alibi evidence to discredit such testimony.

cation of the date of the alleged crime [so] that he can prepare his defense."). Another and more specific source of a notice requirement is article I, section 12 of the Utah Constitution, which provides that an accused has the right "to demand the nature and cause of the accusation against him, [and] to have a copy thereof." This provision has been held to require that the accused be given sufficient information "so that he can know the particulars of the alleged wrongful conduct and can adequately prepare his defense." *State v. Burnett*, 712 P.2d 260, 262 (Utah 1985); *see also State v. Taylor*, 14 Utah 2d 107, 108–09, 378 P.2d 352, 353 (1963); *State v. Myers*, 5 Utah 2d 365, 372, 302 P.2d 276, 280 (1956).

These two clauses certainly differ in their specificity and overall scope. However, in the context of notice claims analogous to Fulton's, this Court has made no analytical distinctions between the protections offered by the due process clause and the more precise requirements of article I, section 12; both have been used with similar effect. *Compare, e.g., State v. Robbins*, 709 P.2d 771, 772–73 (Utah 1985) (decided under due process rubric) and *State v. Bundy*, 684 P.2d 58, 61–62 (Utah 1984) (due process), *with, e.g., State v. Myers*, 5 Utah 2d 365, 372, 302 P.2d 276, 280 (1956) (decided under art. I, § 12), and *State v. Taylor*, 14 Utah 2d 107, 108–09, 378 P.2d 352, 353 (1963) (art. I, § 12). Therefore, in the context of the present case there is no need to determine the precise source of the right. The crux of both theories is that a criminal defendant must be sufficiently apprised of the particulars of the charge to be able to "adequately prepare his defense." *State v. Burnett*, 712 P.2d at 262; *accord McNair v. Hayward*, 666 P.2d at 326.

What, then, is the content of this right to be given sufficient information about the charges to be able to adequately prepare one's defense? We have no occasion here to define the precise parameters of consti-

tutionally adequate notice or even to determine whether any more exact articulation of that right is possible. Rather, it is more useful to describe the vehicles for asserting that right, the methods of obtaining information from the prosecution, and the general standards by which that information is to be judged. A defendant normally obtains the information necessary to satisfy the constitutional requirement of the right to adequate notice through the operation of an information and a bill of particulars. *See* Utah R.Crim.P. 4(b), (e) (codified in Utah Code Ann. § 77–35–4(b), (e) (1982)); *State v. Solomon*, 93 Utah 70, 75, 71 P.2d 104, 106 (1937). The reason these two operate together is because under statutory law, an information may be an extremely summary statement of the charge, indeed one that would not provide the defendant with sufficient particulars to enable him to adequately prepare a defense. *See* Utah R.Crim.P. 4(b), (e) (codified in Utah Code Ann. § 77–35–4(b), (e) (1982)). Because a bill of particulars may serve to supplement such an information, this Court has held that a defendant is entitled to a bill of particulars as a matter of right when the notice provided by the information alone is constitutionally deficient. *See State v. Robbins*, 709 P.2d 771, 773 (Utah 1985); *State v. Solomon*, 93 Utah at 75, 71 P.2d at 106.

With respect to the time of the offense, a defendant not only may seek a bill of particulars, but also has a more specific statutory right to obtain from the prosecutor upon demand a written specification "as particularly as is known to [the prosecutor] the ... time of the commission of the offense charged." Utah Code Ann. § 77–14–1 (1982).[7]

■ In the present case, we reject Fulton's claim that he received insufficient notice of the time of the offense to permit him to adequately prepare a defense. First, although it was not necessary to

---

7. Once the prosecutor identifies the date of the offense "as particularly as is known to him [or her]," the prosecutor can give no better notice. Of course, it is still possible that notice provided by the information, the bill of particulars, and the section 77–14–1 demand may still be constitutionally deficient under certain circumstances. However, we have no such situation before us.

allege the time of the offense under Utah Rule of Criminal Procedure 4(b), the prosecutor did include in the information an allegation that the offense took place "on or about June 1, 1983." This certainly put Fulton on notice as to when the State contended the crime had occurred. But even if it could be argued that this information was constitutionally insufficient, Fulton cannot complain. He made no inquiry of the prosecution regarding additional facts by way of either a bill of particulars or a demand for information under section 77–14–1.[8] And he did not raise the inadequacy of the information before trial by written motion, as required by Utah Rule of Criminal Procedure 12(b)(1). Utah Code Ann. § 77–35–12(b)(1) (1982).[9] Therefore, he waived the issue and cannot raise it for the first time on appeal. Utah R.Crim.P. 12(d) (codified in Utah Code Ann. § 77–35–12(d) (1982)); see, e.g., State v. Miller, 674 P.2d 130, 131 (Utah 1983); State v. Wilson, 642 P.2d 394, 396 (Utah 1982); cf. State v. Booker, 709 P.2d 342, 346 (Utah 1985).

The third issue Fulton raises is whether there was a prejudicial variance between the dates alleged in the information and the evidence presented by the prosecution at trial. By definition, the right to constitutionally adequate notice requires that the information given by the prosecution must be such that the defendant can confidently rely on it in preparing for trial. Therefore, an essential corollary of the defendant's right to obtain information on the alleged offense from the prosecution is some rule or doctrine which assures that the information given is reliable. The variance doctrine can fulfill this function by prohibiting the prosecution from introducing at trial evidence that varies from the information previously given, if that variance would prejudice a defendant's case and if the defendant has not been allowed sufficient time before trial (by means of a continuance if necessary) to prepare to meet the prosecution's changed position.

The principle underlying the variance rule was eloquently stated in State v. Myers, 5 Utah 2d 365, 372, 302 P.2d 276, 280 (1956):

> It would be a mockery of the constitutional rights of defendant[10] to allow the state to falsely state the particulars of the offense charged and then without amendment and without giving defendant additional time to meet new evidence beyond those particulars obtain a conviction founded on said evidence.

For this reason, whenever the prosecution changes its position, a defendant may seek a continuance. If the trial court finds the variance to be prejudicial, it must grant a continuance as a matter of right. See id.; State v. Waid, 92 Utah 297, 311–12, 67 P.2d 647, 653 (1937) (Wolfe, J., concurring); cf. State v. Burnett, 712 P.2d 260, 261–62 (Utah 1985).

However, once a continuance is granted and the defendant is allowed sufficient time to prepare a defense, the prejudice is obviated and the earlier existence of variance is no longer a ground for complaint. In addition, the failure of a defendant to seek a continuance negates any claim of surprise and amounts to a waiver of any

---

8. Our decision in State v. Bleazard, 103 Utah 113, 133 P.2d 1000 (1943), indicates that such a failure constitutes a waiver of the right to complain about the inadequacy of the notice given by the information. Because Rule 12 disposes of this matter, we need not consider whether the implicit ruling of Bleazard, that a defendant must make affirmative efforts to obtain constitutionally required information before he can complain of the prosecution's failure to provide it, retains its validity today. With the promulgation of Rule 12, such a question likely has become, as a practical matter, entirely academic.

9. Rule 12(b)(1) provides:

The following shall be raised at least five days prior to trial:

(1) Defenses and objections based on defects in the indictment or information other than that it fails to show jurisdiction in the court or to charge an offense, which objection shall be noticed by the court at any time during the pendency of the proceeding. (Emphasis added.)

10. Myers referred to article I, section 12. However, as noted earlier, this Court has also occasionally grounded the right to adequate notice on the due process clause of the state constitution, article I, section 7. See McNair v. Hayward, 666 P.2d 321, 326 (Utah 1983) (variance rule based on due process).

claim of variance. *See, e.g., State v. Knight*, 734 P.2d 913, 918 (Utah 1987).

■ In this case, Fulton did not seek a continuance; therefore, his variance claim has not been preserved for our consideration on appeal. But even if we were to reach the issue, Fulton's claim would fail because he has not shown a constitutionally fatal variance between the charges and the proof.

The information stated that the offense took place on or about June 1, 1983—the Wednesday following Memorial Day. Fulton sought no bill of particulars, and the charging allegations of the information regarding time remained unchanged as of the trial date. At trial, the prosecution's proof as to time was put on through the victim and the mother. They testified that the incident occurred one day in June when Fulton had been at their house for breakfast. They were unable to fix the date with precision. Fulton conceded that he had eaten breakfast with the victim and the mother sometime after June 1st but before June 11th. His defense consisted of an attempt to establish an alibi for June 1st. To this end, he introduced his time cards to establish that he was working May 31st through June 3rd and, therefore, could not have committed the crime "on or about June 1, 1983." Because the crime could not have been committed on June 1st, defendant contends that there was a fatal variance between the allegations of the information and the proof at trial.

■ This argument is without merit. The alibi evidence did not support Fulton's contention that the crime could not have been committed within the time period alleged in the information. Our previous cases have permitted a one- to four-day variance where the approximation "on or about" is used. *E.g., In re R.G.B.*, 597 P.2d 1333, 1335 (Utah 1979); *State v. Wadman*, 580 P.2d 235, 236–37 (Utah 1978); *State v. Middelstadt*, 579 P.2d 908, 910 (Utah 1978). A greater variance is permissible where time is not a critical issue at trial. *State v. Cooper*, 114 Utah 531, 540–41, 201 P.2d 764, 769–70 (1949) (ten-day variance permitted where alibi defense not asserted and where no danger of double jeopardy existed).

As noted, Fulton introduced his time cards to establish that he was working May 31st through June 3rd and therefore could not have committed the crime on or about the day charged. However, those cards indicated that he was absent from work for several hours on the mornings of both May 31st and June 2nd. Therefore, the alibi evidence adduced by Fulton, even if believed, did not preclude the possibility that he abused the victim on May 31st or June 2nd, two dates acceptably close to the June 1st date charged in the filed information.

Fulton's fourth point on appeal challenges sections 76–5–409, 76–5–410, and 76–5–411 of the Code.[11] He first claims

11. Sections 76–5–410 and –411 were amended in 1985, but the amendments did not constitute a change in substance. As enacted in 1983, the statutes read as follows:

76–5–409. (1) Notwithstanding any provision of law requiring corroboration of admissions or confessions, and not withstanding [sic] any prohibition of hearsay evidence, a child's statement indicating in any manner the occurrence of the sexual offense involving the child is sufficient corroboration of the admission or the confession regardless of whether or not the child is available to testify regarding the offense.

(2) A child, for purposes of subsection (1), is a person under the age of 14.

76–5–410. Notwithstanding any other provision of law or rule of evidence, a child victim of sexual abuse, under the age of ten, shall be considered a competent witness and shall be allowed to testify without prior qualification in any judicial proceeding. The trier of fact shall be permitted to determine the weight and credibility to be given to the testimony.

76–5–411. (1) Notwithstanding any other provision of law or rule of evidence, a child victim's out of court statement regarding sexual abuse of the child is admissible into evidence though it does not qualify under an existing hearsay exception, so long as: (1) the child testifies; or (2) in the event the child does not testify, there is other corroborative evidence of the abuse. Before admitting such a statement into evidence, the judge shall determine whether the general purposes of the evidence are such that the interest of justice will best be served by admission of the statement into evidence. In addition, the court shall consider the age and maturity of the child, the nature and duration of the abuse, the relationship of the child to the offender, the reliability of the assertion, and the relia-

that section 76–5–410, which excepted child victims of sexual abuse from the presumption under section 78–24–2(2) of the Code that children under the age of ten were incompetent to testify,[12] violates the equal protection clause by making an irrational distinction between child victims of sexual abuse and child victims of other crimes. Fulton also contends that section 76–5–410 deprives him of his due process right to a fair trial by allowing a young child's testimony to be admitted into evidence without a prior competency determination.

Fulton's arguments are without merit. Whatever validity Fulton's equal protection claim might have had when section 78–24–2(2) was still in effect is merely academic at this point. Quite soon after section 76–5–410 was enacted as an exception to the incompetency presumption of section 78–24–2(2), Utah R.Evid. 601 came into effect and completely altered the law with respect to witness competency. Rule 601(a) states:

"Every person is competent to be a witness except as otherwise provided in these rules." This language was intended to abolish age, mental capacity, and other grounds which used to render a person incompetent as a witness.[13]

■ Rule 601 impliedly repealed all inconsistent statutes,[14] including section 78–24–2(2) and its presumption of incompetency for children under ten years of age. Section 78–24–2 was reenacted in 1984 with changes that bring it into conformity with Rule 601. It now reads: "Every person is competent to be a witness except as otherwise provided in the Utah Rules of Evidence." Thus, the law in Utah is that all witnesses are competent, and section 76–5–410 is not an exception to this general rule. Every person is considered competent to be a witness and must be allowed to testify unless the testimony is otherwise excludable under the Utah Rules of Evidence. In

bility of the child witness, in deciding whether to admit such a statement.

(2) A statement may be admitted under this exception only if the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with an opportunity to prepare to meet it, his intention in offering the statement, and the particulars of it.

(3) For purposes of this section, a child is a person under the age of ten.

1983 Utah Laws ch. 88, §§ 28–30 (current version at Utah Code Ann. §§ 76–5–409 to –411 (1986)).

**12.** Section 78–24–2(2) states: "The following persons cannot be witnesses: ... Children under ten years of age, who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly." Utah Code Ann. § 78–24–2(2) (1977) (amended by 1984 Utah Code ch. 35, § 1). Under this statute it was improper to admit into evidence the testimony of a child under the age of ten without prior qualification showing that the child was in fact competent. *E.g., State v. Wilkerson*, 612 P.2d 362 (Utah 1980); *State v. Cooley*, 603 P.2d 800 (Utah 1979).

**13.** The notes of the Committee on the Judiciary concerning the identically worded Federal Rule of Evidence 601 state that the effect of the rule is "to abolish age, mental capacity, and other grounds recognized in some State jurisdictions as making a person incompetent as a witness." H.R.Rep. No. 650, 93rd Cong., 2d Sess., *reprinted in* 28 U.S.C. app. 699 (1982 ed.). The Advisory Committee's comments on proposed Federal

Rule of Evidence 601 are also instructive as to the intended effect of the rule and the reasons for abandoning competency standards:

No mental or moral qualifications for testifying as a witness are specified. Standards of mental capacity have proved elusive in actual application. A leading commentator observes that few witnesses are disqualified on that ground. Weihofen, *Testimonial Competence and Credibility*, 34 Geo.Wash.L.Rev. 53 (1965). Discretion is regularly exercised in favor of allowing the testimony. A witness wholly without capacity is difficult to imagine. The question is one particularly suited to the jury as one of weight and credibility, subject to judicial authority to review the sufficiency of the evidence. 2 Wigmore §§ 501, 509. Standards of moral qualification in practice consist essentially of evaluating a person's truthfulness in terms of his own answers about it. Their principal utility is in affording an opportunity on voir dire examination to impress upon the witness his moral duty. This result may, however, be accomplished more directly, and without haggling in terms of legal standards, by the manner of administering the oath or affirmation under Rule 603.

Fed.R.Evid. 601 advisory committee note.

**14.** The Preliminary Note to the Utah Rules of Evidence states: "Any existing statutes inconsistent with these rules, if and when these rules are adopted by the Supreme Court, will be impliedly repealed." These rules were adopted under authority conferred by Utah Code Ann. § 78–2–4 (1977).

light of these developments occurring in the law well before Fulton's trial, we reject Fulton's equal protection argument. Utah's law regarding competency does not make any distinctions or classifications that appear suspect under the equal protection clause.

Fulton also contends that section 76–5–410 violated his right to a fair trial, as guaranteed by the federal due process clause, by mandating that the trial court admit into evidence the testimony of the eight-year-old complaining witness without first conducting an inquiry into the child's competency. Defendant construes this statute as eliminating any power in the trial court to keep such testimony out. We cannot agree.

■ The fact that section 76–5–410 and Rule 601 abolished the requirement that a trial court hold a competency hearing before admitting the testimony of a child under the age of 10 does not mean that the trial court may never prevent a child from testifying. Under Utah Rule of Evidence 403, a court may exclude the testimony of any witness if the testimony's "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." In the past, competency requirements served to ensure that the jury would not be exposed to unreliable testimony; now Rule 403 can be employed to serve a very similar function.[15] J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 601[04], at

601–29 (1985) (judges should apply Fed.R. Evid. 403 to problems previously considered in the competency setting). We believe that Rule 403 adequately protects a defendant's right to a fair trial and gives him or her an opportunity to raise concerns that prior to our adoption of Rule 601, might have been addressed in a competency hearing.

Fulton's motion to exclude the testimony of the victim, then, should have been made under Rule 403. Fulton failed to make such a motion and has not raised the Rule 403 issue on appeal. He has, however, claimed that the admission of the testimony denied him due process. We have examined the record and conclude that had the trial court admitted the testimony under Rule 403, it would not have abused its discretion. We find that admission of testimony that met the Rule 403 standard did not deprive Fulton of his due process right to a fair trial. *Cf. State v. Hackford*, 737 P.2d 200 (Utah 1987).

Fulton challenges sections 76–5–409 and 76–5–411 by claiming that the statutes deny his sixth amendment right to confrontation and violate his due process rights. This issue was also raised in *State v. Nelson*, 725 P.2d 1353 (Utah 1986). In *Nelson*, the defendant claimed that sections 76–5–409 and 76–5–411 violated his right to confrontation because they allow a victim's out-of-court statements into evidence and because confrontation via cross-examination is not as good as confrontation at the time the out-of-court statements were made. This Court rejected Nelson's argument and held that "'where the declarant

**15.** It follows that the elements of competency outlined in our past case law are not wholly irrelevant to a Rule 403 determination. *See, e.g., State v. Sanchez*, 11 Utah 2d 429, 361 P.2d 174 (1961). Therefore, in determining the probative value and possible unfair prejudice of a child's testimony, the trial court may consider the child's ability to function in the courtroom setting, i.e., to understand questions, to communicate those facts to the jury, to distinguish truth from fantasy or falsehood, etc. The court may also consider the age of the child at the time the relevant events occurred, the amount of time that has elapsed, and the degree of recollection the child demonstrates. In addition, the court may take into account the child's susceptibility to suggestion and whether the

child has been intentionally prepared or unconsciously influenced by adults in such a way that it is likely the child is only parroting what others have said about the relevant facts. *E.g., Hollaris v. Jankowski*, 315 Ill.App. 154, 42 N.E.2d 859 (1942) (boy injured when he was four years old testified four years later and admitted that he was repeating what he had heard others say about the accident); *cf. State v. Nelson*, 725 P.2d 1353, 1355 n. 3 (Utah 1986) (reliability of a child's statement depends in part on number of times statement was repeated or rehearsed). In sum, the court should consider these factors and any others that might be presented by the unique facts of each case that have a bearing on the balancing required by Rule 403.

is not absent, but is present to testify and to submit to cross-examination ... the admission of his out-of-court statements does not create a confrontation problem' under the federal constitution." *State v. Nelson,* 725 P.2d at 1356 (quoting *California v. Green,* 399 U.S. 149, 162, 90 S.Ct. 1930, 1937, 26 L.Ed.2d 489 (1970)).

 *Nelson* is dispositive of Fulton's challenge on this point. The victim testified at trial and was available for cross-examination. Therefore, the requirements of section 76–5–411(1)(a) were met. Fulton's other arguments on this point are without merit.[16]

Fulton's fifth point on appeal charges that the minimum mandatory sentencing scheme contained in section 76–5–403.1 of the Code constitutes cruel and unusual punishment, proscribed by the eighth amendment to the federal constitution. In *State v. Bishop,* 717 P.2d 261 (Utah 1986), this Court considered the same issue and rejected that challenge. *Id.* at 267–72. The same conclusion obtains here.

The trial court's ruling on all the issues raised here is affirmed.

HALL, C.J., and HOWE and DURHAM, JJ., concur.

STEWART, Associate Chief Justice, concurs in the result.

---

16. As *Nelson* points out, the trial court is required by section 76–5–411(2) to make specific findings regarding the reliability of a child's out-of-court statements. The record reveals no indication that such findings were made. However, because Fulton did not raise the question, either at trial or on appeal, of the trial court's failure to make findings, any right of review was waived. *State v. Nelson,* 725 P.2d 1353, 1355 n. 3 (Utah 1986). Although Fulton did object to the victim's testimony at trial, his objection was based on competency grounds. This is not a competency issue. Had Fulton raised the reliability issue at trial or on appeal, we might be willing to review it. Since he has not, we do not think that the trial court's failure rises to that level of manifest error requiring this Court to reach an issue not passed on below.